## Commonwealth of Virginia, Department of Transportation

v.

## Fairbrook Business Park Associates

Record No. 911489

June 5, 1992

Present: All the Justices

*James F. Hayes, Senior Assistant Attorney General (Mary Sue Terry, Attorney General; K. Marshall Cook, Deputy Attorney General; Richard L. Walton, Jr., Senior Assistant Attorney General*, on brief), for appellant.

*Marc E. Bettius (William L. Carey; Eric J. Berghold; Miles & Stockbridge*, on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

The primary issue in this condemnation case is whether a property owner can use its master plan of development in its proof of damages to the residue after the condemnor had relied upon information in the master plan in its case-in-chief.

On December 30, 1988, by its certificate of take, the Commonwealth of Virginia, Department of Transportation (VDOT) acquired: (1) the fee simple title to an 84,419 square foot parcel, and (2) a drainage easement in an adjoining 18,522 square foot parcel, both owned by Fairbrook Business Park Associates, a limited partnership (Fairbrook). The 84,419 square foot parcel is almost 2 acres (the two-acre parcel), and the 18,522 square foot parcel is .4252 acres (the .4-acre parcel). The two-acre and .4-acre parcels were the southeastern parts of a 1,212,253 square foot tract, or approximately

27 acres (the 27-acre parcel) in the Town of Herndon, Fairfax County, lying between the north side of the Dulles Toll Road and the southeast side of the Herndon Parkway.

VDOT acquired the two-acre parcel for construction of an access ramp from the Springfield Bypass to the Dulles Toll Road and the .4-acre parcel for surface water drainage necessitated by VDOT's construction. On April 19, 1990, VDOT filed its petition to condemn these interests.

Both parties agreed that the highest and best use of Fairbrook's 27-acre tract was for office development. Wiley Pinkston, VDOT's appraiser, valued the entire tract of land at $12.50 per square foot, or $15,153,163. N. MacKenzie Downs, Fairbrook's appraiser, valued it at $13.50 per square foot, or $16,365,415.

The Herndon zoning ordinance requires that at least 20% of Fairbrook's 27 acres be open space and limits the total floor area of office buildings to 0.50 of the area of Fairbrook's tract. Herndon Zoning Ordinance §§ 28-24-10, 28-24-5 (Oct. 26, 1971). The ordinance defines open space and floor area ratio as follows:

> *Open Space.* Land which is not occupied by any building, parking or loading space, vehicular travel lane, driveway, sidewalk or street. Open space on properties shall contain landscaping, walks or paths, and non-functional amenities.

> *Floor area ratio.* A quotient which is determined by dividing the total floor area of all buildings, measured to the outside of the building, on a lot, by the area of the lot. . . . [P]arking structures, both above and below grade, are excluded from the computation of floor area ratio.

> *FAR.* Means "floor area ratio."

*Id.* § 28-2.

Because VDOT had taken the fee simple interest in the two-acre parcel, Fairbrook could no longer count the two-acre parcel as a part of its available open space under the zoning ordinance. During discovery, VDOT apparently realized that the loss of this space would substantially reduce Fairbrook's projected buildable office space and, consequently, could substantially damage the value of the residue of the 27-acre tract.

In an apparent effort to reduce Fairbrook's damage claim, VDOT amended its pleadings on April 15, 1991, to reduce the interest taken in the two-acre parcel from a fee simple interest to one of a "perpetual easement." The easement taken in that parcel was described in the amended petition as

> the right to construct, reconstruct, repair, improve, alter and maintain the said Springfield Bypass in accordance with the attached plans marked Exhibit[s] A & B. It also includes the right to utilize the land in the future (1) for construction, reconstruction, alteration, improvement, repair and maintenance of the said Route, (2) for all other highway purposes, and (3) in accordance with all the rights and incidents normally acquired in the property by (fee simple, easements, etc.).

> . . . .

> The said route having been designated, or declared to be a Limited Access Highway[,] . . . the Commonwealth Transportation Commissioner . . . declares it necessary to be taken any and all easements of access, light or air incident to the lands of the landowner abutting upon said Limited Access Highway, any ramps, loops, or connections at or with intersecting highways.

At the just compensation hearing of VDOT's amended petition and as a part of VDOT's case-in-chief, Pinkston opined that Fairbrook's compensation should be $450,000. Four hundred twenty-seven thousand dollars of that amount was to compensate Fairbrook for its loss of potential open space and FAR on that portion of the two parcels that did not qualify as open space. In explanation of why and how he arrived at his $427,000 figure, Pinkston testified that

> before the taking the subject property had a certain amount of available FAR that we assumed, which is 0.50. After the taking the subject still has the same available FAR. That's the situation before and after.

> The thing that changes is that the [improved] area cannot be used for open space, and that [improved] area equates to approximately [61] parking spaces . . . . The remaining area in the

taking outside the [improved] area can then be transferred — can then be used as open space [credit], freeing up an equal amount of space on the [residue after the take] for parking.

Pinkston arrived at the $427,000 figure by multiplying his estimated number of 61 lost parking spaces by his estimated $7,000 cost of replacing each such parking space with a space in "structured" parking, meaning parking in multilevel garages. Pinkston concluded that structured parking would be necessary based upon his assumption that Fairbrook would maintain a .50 FAR on all of its 27-acre tract. Pinkston testified that he had examined a number of Fairbrook's development plans, all of which indicated that it would use a .50 FAR. Pinkston admitted that VDOT did not have a plan for the site and that "what they did was to slightly rearrange the plan [Fairbrook] had."

Pinkston also took into consideration that Fairbrook had approximately 30% of available open space. The record indicates that this figure was shown only in Fairbrook's development plans.

In responding to Pinkston's appraisal process, Fairbrook's witnesses agreed with his assumption of a .50 FAR "build-out" and the necessity of providing structured parking on the residue to compensate for the loss of open space. However, they opined that the balance of the unimproved two-acre easement area could not be counted as open space under the Herndon ordinance. Accordingly, Neil Douglas Carter, Fairbrook's architect, testified that in order to maintain the pre-take .50 FAR, a total of 215 structured parking spaces would have to be built on the residue to compensate for the open space taken by the two-acre easement. He estimated that cost as $2,086,629.

Downs testified that this $2,086,629 cost was damage to the residue, and that the value of the easements taken was $784,776. Therefore, he estimated that Fairbrook should recover a total compensation of $2,871,405 if VDOT took only an easement interest in the two-acre parcel.

However, Fairbrook recognized that it could recover no more than the fee simple value of the land taken and damages to the residue. Accordingly, Carter testified that if the open space land area was reduced by the two acres taken in fee simple, 93, rather than 215, parking spaces would be required to maintain a .50 FAR on the

remaining 25 acres. This reduction would decrease the cost of providing compensating parking spaces from $2,086,629 to $622,356.[1]

Downs opined that if a fee simple in the two-acre parcel were taken, $1,787,017 would be his appraisal of Fairbrook's loss. Downs itemized his total for the take of $1,164,661 as $1,139,656 for the two-acre parcel and $25,005 for the drainage easement in the .4-acre parcel. Based on Carter's testimony concerning the cost of providing compensating parking for 93 cars, Downs estimated the damage to the residue as $622,356.

The court instructed the commission that if it found that

the costs associated with the taking of the easement interest together with the damage to the residue exceeds the value that would accrue based upon a taking in fee simple and any damages to the residue therefrom, then you shall make your valuation and damages as if the property had been taken in fee simple.

The commission awarded damages as if title to the property had been taken in fee simple, $1,139,656 for the area of the easements and $657,361 for damages to the residue.[2] The court entered judgment on that award, and VDOT appeals.

First, VDOT argues that the court should have granted its motion to strike Fairbrook's evidence of damage because it was based on a frustration of the owner's speculative plans. Ordinarily, such evidence should not be considered by the commission in fixing a landowner's damages. *Highway & Transp. Comm'r* v. *Lanier Farm*, 233 Va. 506, 509, 357 S.E.2d 531, 533 (1987); *see Staunton* v. *Aldhizer*, 211 Va. 658, 665, 179 S.E.2d 485, 490 (1971). Here, however, VDOT introduced evidence of a .50 FAR on Fairbrook's land and VDOT's theory of the cost of adjusting Fairbrook's residue

---

[1] Carter's testimony indicated that it would cost an average of $9,705 to build the 215 parking spaces because of the economic necessity, and consequent extra expense, of building a number of those spaces underground. The average per space cost dropped to $6,692 when only 93 additional spaces were required and the necessity of building underground space was eliminated.

[2] Carter had added to his $622,356 estimated cost of 93 parking spaces the replacement cost of $16,740 for three parking spaces lost in the drainage easement, making his total $639,096. The record does not reveal the source of the additional $18,265 that the commission awarded as damages to the residue in its total of $657,361.

to the take was based, at least in part, on Fairbrook's plans of development. Given this, we cannot say that the trial court erred in admitting Fairbrook's rebuttal evidence that used the plan to show a higher cost of such replacement. *See Shockey* v. *Westcott*, 189 Va. 381, 388, 53 S.E.2d 17, 20 (1949) (litigant's objection to adversary's version of conversation waived by his prior testimony of same conversation).

■ Next, VDOT contends that Fairbrook's damages were duplicated by the award of the fair market value of the easement taken *and* the cost of replacing the parking spaces lost as a result of the taking. We do not reach this issue because: (1) it is not within the scope of the assigned error that "[t]he Court erred in not granting [VDOT's] Motion to Strike . . . Fairbrook['s] evidence of damage because it was based on a frustration of the owner's speculative plans," Rule 5:17(c); and (2) it was not argued in the brief. Rule 5:27(e); *Quesinberry* v. *Commonwealth*, 241 Va. 364, 370, 402 S.E.2d 218, 222 (1991), *cert. denied*, 502 U.S. ___, 112 S.Ct. 113 (1991).

■ Next, VDOT argues that the court erred in refusing to permit its engineer to testify in rebuttal to Fairbrook's evidence of a loss of parking spaces in the drainage easement. VDOT's proffer indicated that the cost of adjusting this space to the drainage easement in the area would exceed the value of the parking. However, as the trial court pointed out, the proffered testimony was irrelevant because it was not limited to the pre-take cost of adjusting the area for parking based on the proximity of a stream, but also included the post-take adjustment cost made necessary by VDOT's improvements. Accordingly, the court did not abuse its discretion in refusing to permit this testimony.

■ Next, VDOT maintains that the court erred in refusing to permit testimony from the Herndon zoning administrator and his deputy that the town council probably would treat the two-acre parcel as open space under the town's zoning ordinance. The court permitted them to describe the council's prior interpretations of its open space requirement, then allowed the commission to decide whether the council would adopt VDOT's predicted interpretation. VDOT cites no authority to support its claim that one charged with the enforcement, but not the interpretation, of an ordinance can testify as to what interpretation might be placed upon the ordinance by the official or body charged with that duty. Nor do we find any supporting

authority for this unusual proposition. Accordingly, we find no merit in this contention.

Finally, VDOT claims that the court erred in instructing the commission that it could make the award for the take as though it were a fee simple take even though VDOT only sought an easement in the property. However, VDOT submitted an instruction that would have told the commission in pertinent part that:

> If, on the other hand, you should find that the easement will deprive the owner entirely and permanently of the use and enjoyment of the land upon which it is imposed, then you shall award the owner the same compensation as you would have awarded if the land burdened with an easement had been taken in fee simple.

■ At trial, VDOT's objection was to the inclusion of this additional language that followed VDOT's proposed language:

> If the Commissioners find that the cost associated with the taking of the easement interest, together with the damage to the residue, exceeds the value that would accrue based on a taking in fee simple and any damages to the residue therefrom, then you shall make your valuation and damages as if the property had been taken in fee simple.

VDOT waived its present objection to the commission's consideration of the value of a fee simple take by its submission of an instruction on the subject. And, if the court was to instruct the commission on this issue, certainly the addition of language concerning damages to the residue was proper. Code § 25-46.20. Hence, we find no merit in this contention.

Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*