ALVIN H. CARSTENSEN, ET AL.

v.

CHRISLAND CORPORATION, ET AL.

Record No. 930650

April 15, 1994

Present: All the Justices

*John M. Bredehoft (Elaine C. Bredehoft; Charlson & Bredehoft,* on briefs), for appellants.

*Kathryn T. Harris (Arent, Fox, Kintner, Plotkin & Kahn,* on brief), for appellees Chrisland Corporation, Patricia A. Kelley and David H. Daniel.

*(James A. Hoffman, II; McGuire, Woods, Battle & Boothe,* on brief), for appellee First American Title Insurance Co.

JUSTICE LACY delivered the opinion of the Court.

This litigation arises from a dispute over whether a pipestem driveway shared by the owners of two adjacent lots and located on their land, is subject to an easement for the benefit of a third adjacent landowner.

Chrisland Corporation develops and builds single-family residential communities. In 1988, Fairfax County approved Chrisland's Walnut Hill subdivision plans for 18 acres of land and Chrisland began selling lots. In early April 1988, Chrisland entered into a contract with Alvin H. and Marie V. Carstensen for the purchase of Lot 25. Shirley M. O'Neal executed a similar contract with Chrisland to purchase Lot 26. Settlement on both contracts occurred in June of 1989. First American Title Insurance Company (First American) issued title insurance policies to both the Carstensens and O'Neal.

The sales brochure given to the Carstensens and to O'Neal, as well as to all other home purchasers in the subdivision, depicted the general location and configuration of all lots and driveways in the development. Lots 25, 26, and 27 are located at the end of a cul-de-sac. The brochure shows the three lots sharing a common driveway to access the cul-de-sac. The sales brochure was made a part of the sales contracts.

When O'Neal and Carstensen settled on their respective lots, the pipestem driveway was constructed and paved. It was located on portions of both Lots 25 and 26, and in front of and adjacent to Lot 27.

In 1990, Patricia Ann Kelly and David H. Daniel (Kelly/Daniel) executed a contract of sale for Lot 27. As Kelly/Daniel were preparing to close on Lot 27, Chrisland discovered that no easement had been recorded which permitted the owners of Lot 27 access over the pipestem driveway. O'Neal and the Carstensens refused to grant Chrisland's request for an easement in favor of Lot 27 and subsequently wrote a letter to Kelly/Daniel telling them they were not allowed to use the common driveway.

When made aware of these circumstances, First American, as a condition of issuing a title insurance policy on Lot 27, required Kelly/Daniel to execute an acknowledgment reflecting the possibility that the lot might not have vehicular access. Chrisland agreed to undertake legal efforts to record an easement for Lot 27 at its expense and Kelly/Daniel agreed to cooperate with Chrisland's legal efforts.

On June 7, 1990, Chrisland recorded a Declaration of Common Driveway Easement pursuant to Paragraph 6 of the contracts of sale between Chrisland Corporation and the Carstensens and O'Neal. This

declaration recited that Paragraph 6 reserved the right "to create after conveyance easements which benefit the property or the community of which it is a part, said provision expressly surviving the settlement." Kelly/Daniel closed on Lot 27 on June 15, 1990.

In August 1990, Chrisland and Kelly/Daniel (hereafter, collectively, Chrisland) filed a bill of complaint seeking a declaration that Lots 25 and 26 were subject to an easement in favor of Lot 27. The Carstensens and O'Neal (hereafter, collectively, the Neighbors) requested that First American provide a defense to Chrisland's suit in accordance with the terms of their title insurance policies. First American declined to defend, stating that the policies did not cover the matters raised in the bill of complaint and, therefore, First American had no duty to tender a defense. Chrisland non-suited that litigation on July 19, 1991, and refiled the instant action on July 31, 1991. When tendered the second complaint, First American again denied coverage under the policies, and refused to defend the Neighbors in the litigation.

In response to Chrisland's second bill of complaint, the Neighbors filed a cross-bill of complaint against Chrisland and filed a third-party bill of complaint against First American. In its cross-bill, the Neighbors sought, *inter alia,* vacation of the recorded easement and a deed of correction, and alleged a claim of intentional interference with their contracts with First American. In the third-party bill of complaint, the Neighbors charged that First American breached its fiduciary duty to them, breached the contracts of title insurance, refused to defend the litigation in bad faith, and engaged in legal malpractice.

A number of the claims made in the pleadings were resolved prior to trial. On December 18, 1992, the trial court entered an order granting Chrisland's summary judgment motion, finding an easement by necessity and an easement by contract in favor of Lot 27 over Lots 25 and 26. The trial court denied the Neighbors' motion for summary judgment seeking to vacate the easement recorded by Chrisland. With regard to the third-party bill of complaint, the trial court sustained First American's demurrer to that portion of the complaint seeking damages for various types of emotional distress and for attorneys' fees under the tort causes of action. The trial court also granted First American's motion for summary judgment to those counts in the third-party bill of complaint charging First American with breach of contract and bad faith denial of representation.

The matter proceeded to trial on the Neighbors' allegations of breach of fiduciary duty and legal malpractice against First American,

and tortious interference with contract against Chrisland.[1] Following presentation of the Neighbors' evidence, the trial court granted First American's and Chrisland's motions to strike and entered a final order on February 26, 1993 dismissing the case.

The Neighbors appealed, assigning error to the trial court's rulings on the motions for summary judgment, the demurrer, and the motions to strike. We will consider these issues *ad seriatim.*

## I.

## EASEMENTS

The Neighbors first assign error to the trial court's order sustaining Chrisland's motion for summary judgment, holding that Lots 25 and 26 were subject to an easement by necessity and by contract in favor of Lot 27 and denying the Neighbors' motion for summary judgment to invalidate the recording of the Declaration of Easement filed by Chrisland.

A motion for summary judgment is appropriate where there are no material facts in dispute. *Stone v. Alley,* 240 Va. 162, 163, 392 S.E.2d 486, 487 (1990). Chrisland asserts that there are no material facts in dispute with regard to the easement at issue and that the material before the court satisfied the requisite level of proof to establish an easement by necessity and by contract. We disagree.

### A. Easement by necessity

The record in this case, for purposes of the summary judgment motion, falls short of showing undisputed evidence of the elements required to establish an easement by necessity. Chrisland was required to show, by clear and convincing evidence, that (1) the parcels were under common ownership at one time and that, when severed, a need for the easement arose, (2) the easement is reasonably necessary for the enjoyment of the parcel, and (3) other reasonable means of ingress and egress are lacking. *American Small Business Inv. Co. v. Frenzel,* 238 Va. 453, 456-57, 383 S.E.2d 731, 734 (1989).

Initially, the Neighbors strongly disputed Chrisland's assertions that vehicular access to Lot 27 is available only through the pipestem driveway. For example, they asserted that alternative garage designs would provide access and contested Chrisland's assertions that the

---

[1] The remaining counts in the cross-bill and third-party bill of complaint had been settled or dismissed prior to trial and are not in issue here.

pipestem driveway was the only reasonable means of vehicular access. The state of the record at this point shows that material facts necessary to establish the lack of alternative access to the cul-de-sac remained in dispute.

■ Next, Chrisland argues that the need for the easement arose when Lots 25 and 26 were conveyed to the Neighbors, leaving Lot 27 without access to the cul-de-sac. However, the plat and surveys attached to the pleadings and agreed by the parties to be accurate, show "Parcel A-1" adjacent to Lot 27. This parcel, part of the original 18-acre tract, has access to the cul-de-sac. There was no evidence, however, concerning the owner or owners of "Parcel A-1" or its ownership status at the time Lots 25 and 26 were conveyed. In the absence of this information, it is impossible to determine whether the necessity for the easement in issue arose when unity of title between Lots 25, 26, and the remainder of the parcel including Lot 27 was severed, as Chrisland claims.

■ Finally, much of the parties' dispute concerns whether a lack of vehicular access alone justifies the easement as reasonably necessary for the enjoyment of Lot 27. Such a determination depends on the facts and circumstances of each case. *Jones v. Beavers,* 221 Va. 214, 221, 269 S.E.2d 775, 779 (1980). Here, since material facts were in dispute and the evidence before the court was insufficient to meet the required clear and convincing standard of proof, the trial court erred in sustaining Chrisland's motion for summary judgment and in finding an easement by necessity.

### B. Easement by contract

The trial court's determination that the easement was one established by contract was based on Paragraph 6 of the Neighbors' sales contracts. That paragraph contained the following relevant provisions:

The property is also sold subject to easements, if any, created, or to be created, prior to or after conveyance of title in favor of utility companies or municipal authorities for the installation of utilities or street lights *and/or additional* covenants, restrictions or *easements,* amendments thereto, vacations, resubdivisions, etc., which may be *placed on record by the Seller after execution hereof for the benefit of this property and/or community of which it is a part.*

. . . .

> This provision will survive settlement notwithstanding any provi- . sion contained herein to the contrary, and will not require joinder of the then owner of lots previously conveyed. (Emphasis added.)

The Neighbors argued below, as they argue here, that this provision applies only to easements in favor of utility companies and municipal authorities. A plain reading of the emphasized portion of the provision, however, includes easements in favor of other entities if such easements benefit the servient estate or the "community of which it is a part."

The Neighbors also argue that Paragraph 6 did not survive settlement, but was merged into the deed of conveyance. The general rule that a deed supersedes all provisions of an antecedent contract is not an absolute rule and, in the sale of residential property specifically, the deed often reflects only a part of the parties' agreement. *Miller v. Reynolds,* 216 Va. 852, 855, 223 S.E.2d 883, 885 (1976); *Collins v. Lyon,* 181 Va. 230, 245, 24 S.E.2d 572, 579 (1943). The deeds here do not preclude future encumbrances of the property, and the Neighbors' contractual agreement with Chrisland to allow such encumbrances under certain conditions is not inconsistent with the terms of the deeds. The trial court did not err in holding that the provisions of Paragraph 6 survived the settlement and were not merged into the deed.

While construction of Paragraph 6, and whether it was merged into the deeds, were questions which could be resolved by the trial court based on the materials available on summary judgment, this is not true of the determination of whether the easement at issue was a benefit to the community. Chrisland argues that the easement would benefit the community by relieving congestion and by increasing the value of Lot 27 which would, in turn, increase the value of all lots in the subdivision. The only evidence before the trial court supporting Chrisland's position were the plats and brochures which showed only limited off-street parking. No evidence was before the trial court supporting Chrisland's contentions regarding property values. Whether the community would benefit from the easement could not be determined on a motion for summary judgment, based on the evidence before the trial court.

In conclusion, the record before the trial court was insufficient to support summary judgment in favor of Chrisland on its claim that an easement existed by necessity or by contract. We will reverse that order of the trial court and remand the case for further proceedings on this issue.

This determination is not dispositive of issues raised on appeal by the Neighbors with regard to their claims in the third-party bill of complaint against First American for breach of contract, breach of fiduciary duty, and bad faith refusal to defend. Those claims could be asserted regardless of whether an easement ultimately is established. Similarly, the Neighbors' claim against Chrisland for tortious interference with their contracts of title insurance with First American is not dependent on the outcome of the easement issue. Therefore, we must consider the Neighbors' remaining assignments of error.

## II.

## TITLE INSURANCE

In sustaining First American's motion for summary judgment on portions of the third-party bill of complaint, the trial court held that First American did not breach its contracts of title insurance with the Neighbors and that there was no bad faith denial to defend. Based on this holding, the trial court granted Chrisland's motion to strike the Neighbors' evidence of tortious interference with contract. The Neighbors assign error to these orders.

### A. Breach of contract

The Neighbors argue that the easement claimed by Chrisland is covered under their title insurance policies and that the policy exclusions do not apply to an easement by necessity.[2] Therefore, they conclude that First American was required both to provide a defense against Chrisland's claim and to indemnify them for any losses they suffered as a result of those claims.

The Neighbors contend that the easement by necessity is not excluded by policy provision 3(d) as argued by First American. That provision excludes coverage for title defects "attaching or created subsequent to Date of Policy." An easement by necessity, they point out, arises at the time the dominant tract is severed from the subservient tract. Thus, the Neighbors reason that the easement existed prior to the

---

[2] The Neighbors do not argue here, as they did at trial, that the title insurance policy would cover an easement found to exist by virtue of contract pursuant to Paragraph 6 of the sales contracts. We treat that argument as waived. Rule 5:27 (applying Rule 5:17(c)(4)); *Commonwealth v. Fairbrook Business Park Assocs.*, 244 Va. 99, 105, 418 S.E.2d 874, 878 (1992); *Quesinberry v. Commonwealth*, 241 Va. 364, 370, 402 S.E.2d 218, 222, *cert. denied*, 502 U.S. ___, 112 S.Ct. 113 (1991). As First American points out, Exception 3(a) in the policy excludes coverage for easements that are "agreed to."

issuance of the title policies and Section 3(d) does not act to exclude the easement from coverage under the policies.

■ While an easement by necessity legally arises at the time the servient estate is severed from the dominant estate, the easement may remain inchoate until established through judicial order or otherwise. An easement often is not judicially established or sought to be established for many years following the initial severance. *See, e.g., Dillingham v. Hall,* 235 Va. 1, 365 S.E.2d 738 (1988) (easement by necessity arising in early 19th century established by decree in 1983); *Raney v. Four Thirty Seven Land Co.,* 233 Va. 513, 357 S.E.2d 733 (1987) (easement by necessity arising in 1892, established by 1982 decree). If, as the Neighbors contend, this exception in the title policy is not applicable to easements by necessity established after the policy date, a title insurance company, before issuing a policy of insurance, would be required to research the title records for all contiguous properties to determine whether a latent easement by necessity existed in order to protect itself against exposure for a subsequently established easement by necessity. This is an unreasonable burden to place on the title insurance company.

■ Furthermore, the policy provision excluding after-established claims was not the only policy exclusion relied on by First American to deny coverage. In its January 19, 1991 letter to the Neighbors' counsel, First American cited a number of grounds for its denial of coverage. One of those grounds was item 5 of Schedule B, which excluded all unrecorded easements. The easement by necessity at issue in this case clearly was unrecorded at the time the policies were issued. Furthermore, this exclusion reinforces the nature of a title insurance company's business, which is to provide insurance coverage for the validity of the title to the extent diligent examination could or should have discovered defects at the time of policy issuance. Title insurance indemnifies the policyholder for those discoverable, but undiscovered, defects in the title, not for every claim which ultimately might affect the title.

■ Whether an easement ultimately is established, either by contract or by necessity, the exclusions of the title insurance policies would apply to deny coverage for any losses sustained as a result of any easement established. In the absence of coverage, the trial court was correct in holding that First American did not breach its contracts of title insurance with the Neighbors when it denied coverage and refused to provide a defense to the claims asserted by Chrisland.

## B. Bad faith refusal

The Neighbors also appeal the trial court's holding that, in the absence of coverage under the policy, there could be no bad faith refusal to provide a defense to Chrisland's claims. They rely on a number of arguments in support of their position.

Initially, they rely on the general proposition that the duty to defend is broader than the duty to pay. *Brenner v. Lawyers Title Ins. Corp.,* 240 Va. 185, 189, 397 S.E.2d 100, 102 (1990). While *Brenner* stands for this general proposition, the Court in that case went on to hold that the insurer did not have a duty to defend in that case, "because it appears clearly that it would not be liable under its contract for any judgment based upon the allegations of the . . . complaint." 240 Va. at 193, 397 S.E.2d at 104. In light of our holding that there is no coverage under the terms of this title policy for the easement by necessity or easement by contract claimed by Chrisland, *Brenner* is dispositive, and First American had no duty to provide a defense. The Neighbors' remaining arguments regarding the ability to recover under statute, common law, or independent tort are unavailing. Liability cannot attach for bad faith refusal to defend unless there was a requirement that a defense be provided. Accordingly, the trial court did not err in dismissing this count.

## C. Tortious interference with contract

The Neighbors claim that Chrisland Corporation tortiously interfered with their contracts of title insurance by meeting with First American to argue that "First American ought not to tender a defense or represent" the Neighbors against the claims asserted in Chrisland's bill of complaint. The trial court struck this count, relying on its determination that the policies of title insurance did not cover the claims asserted by Chrisland and, therefore, First American was not required to provide a defense for the Neighbors to those claims. In the absence of a contractual duty to defend, no cause of action can lie for breach of that alleged duty. In light of our holding above, affirming the trial court's order dismissing the breach of contract counts, we also will affirm the dismissal of this count.

## III. FIDUCIARY DUTY

In considering First American's motion to strike the Neighbors' evidence on the issue of breach of fiduciary duty, the trial court assumed,

but did not decide, that the duty existed and was breached. The trial court sustained the motion to strike, however, because the Neighbors did not prove any damages that were proximately caused by the breach. The Neighbors assigned error to the trial court's determination and, on appeal, assert that their evidence established the requisite duty, breach, and resulting damage.

The Neighbors contend that First American had a fiduciary duty to them and breached that duty when it failed to disclose information about an easement for Lot 27, the continuing applicability of Paragraph 6 of the sales contracts, and the status of a principal of Chrisland as an agent of First American by virtue of that person's ownership of the insurance agency through which First American sold its title insurance policies to the Neighbors. The Neighbors testified that if they had known these facts, they would not have purchased their respective residences. The Neighbors identified their damages as a decrease in the value of their property due to First American's failure to disclose that information. The amount of the damages the Neighbors claim is the difference in the purchase prices of the properties and their current assessed values, an aggregate decrease of approximately $400,000.

In *Long & Foster Real Estate, Inc. v. Clay,* 231 Va. 170, 343 S.E.2d 297 (1986), we considered the measure of damages in a case where a fiduciary withheld information from its principal which, if disclosed, would have caused the principal to reject the transaction. In that case, we held that the measure of damages is the difference between the value of the item bargained for and the value of the item actually received. *Id.* at 175-76, 343 S.E.2d at 300-01, *cited with approval in, Duvall, Blackburn, Hale & Downey v. Siddiqui,* 243 Va. 494, 498, 416 S.E.2d 448, 450 (1992). Applying that measure of damages here, we agree with the trial court that the Neighbors failed to present sufficient evidence of their damages.

It is the Neighbors' burden to present evidence showing that their damage claims of loss in value represented the difference between the value of the property bargained for and the value of the property actually received. The value of the property bargained for here is based on the land without the potential of an easement in favor of Lot 27 and without the potential placement of future easements on the lots for utility, municipal, or community benefit. This value is the actual price paid by the Neighbors for their respective real property.

The Neighbors attempted to prove their damages by establishing the current assessed values of the properties through their own testimony. The assessed values were lower than the purchase prices and the

Neighbors concluded that the amount of the decrease represented their damages. Neither Neighbor, however, established that the decrease in value was based solely on the Lot 27 easement and other potential easements. The only testimony in this regard is that of Mrs. Carstensen, who stated that she believed the reduced assessment reflected the effect of the easement over the property in favor of Lot 27, the ability of Chrisland to add other easements under Paragraph 6 of the sales contract, and her understanding that Chrisland had returned two of the houses in the subdivision to the bank at a very low offer. Without quantifying the amounts associated with each of the factors she associated with the current value, this testimony does not establish the damages suffered. *Cf. Long & Foster,* 231 Va. at 175, 343 S.E.2d at 300 (expert testified as to value of note with and without unwanted and unbargained for subordination clause or partial releases). As noted by the trial judge, "[The decrease in value] may have been because of the economy or they paid too much for it. There are a lot of things." We agree.

The Neighbors also claimed that, as a result of First American's breach of fiduciary duty, they suffered harassment, poor relations with other neighbors, concern over marketability, concern over violations of the Deed of Trust, concern over the accuracy of the representation of First American, concern over conflicts of interest, inconvenience, humiliation, embarrassment, anger, frustration, and emotional distress.[3] They were precluded from presenting evidence on these damage claims, however, because prior to trial, the trial court entered an order sustaining First American's demurrer to recovery of these emotional distress damages. The Neighbors assigned error to this order.

Citing *Womack v. Eldridge,* 215 Va. 338, 210 S.E.2d 145 (1974), the trial court held that, in the absence of a physical injury, damages for emotional distress may be recovered only if the offending conduct was extreme and outrageous. The trial court held that, as a matter of law, the conduct alleged here was not extreme and outrageous.[4]

The Neighbors correctly point out that there is a difference between seeking recovery based on the tort of intentional infliction of emotional distress and seeking recovery for injury in the form of emotional

---

[3] These damages were also claimed in the legal malpractice and bad faith refusal to defend counts.

[4] The demurrer also challenged the ability to recover attorneys' fees in a tort claim. The trial court sustained that portion of the demurrer, also holding that attorneys' fees can only be recovered as damages in a contract cause of action. The Neighbors do not argue this portion of the ruling on appeal, and, therefore, any issue with respect thereto is waived. Rule 5:27.

distress caused by some other tort. The criteria for sustaining a cause of action for intentional infliction of emotional distress are not the same as those applied to recovery of emotional distress damages flowing from an independent tort. *Compare Russo v. White,* 241 Va. 23, 27, 400 S.E.2d 160, 162 (1991), *with Sea-Land Service, Inc. v. O'Neal,* 224 Va. 343, 354, 297 S.E.2d 647, 653 (1982).

■ The general rule in tort cases is that, in the absence of accompanying physical harm or wanton and willful conduct, emotional distress damages are not recoverable. *Womack,* 215 Va. at 340, 210 S.E.2d at 147; *Hughes v. Moore,* 214 Va. 27, 34, 197 S.E.2d 214, 219 (1973). There are a small number of exceptions to this rule and we have allowed recovery of emotional distress damages based on appropriately pled facts. *See, e.g., Bowers v. Westvaco Corp.,* 244 Va. 139, 148, 419 S.E.2d 661, 667 (1992); *Sea-Land Service, Inc.,* 224 Va. at 354, 297 S.E.2d at 653. None of these theories are pled here. There was no allegation of physical injury in this case and First American's actions alleged in the pleadings as constituting breach of fiduciary duty do not approach, as a matter of law, willful, wanton, or vindictive conduct.

Accordingly, the trial court did not err in sustaining First American's demurrer to the recovery of emotional distress damages and, for reasons discussed above, properly sustained First American's motion to strike the breach of fiduciary duty counts.

## IV. LEGAL MALPRACTICE

At trial, the Neighbors testified that they believed First American was acting as their settlement attorney and believed that the First American employee present and conducting their respective settlements was an attorney. This belief was based on their experience as real estate agents and with real estate settlements. In their experience, they assert, the person conducting a settlement was always an attorney. Other bases for this belief included (1) O'Neal's sales contract which indicated the place of settlement would be "seller's attorney," (2) Paragraph 9 of the sales contract stating that the seller would pay certain costs of settlement if seller's attorney was used; and (3) statements by a Chrisland employee that the Neighbors could save money by agreeing to use Chrisland's settlement attorney. This belief was furthered, the Neighbors testified, when the First American employee conducting the settlement did not indicate she was not an attorney and explained the settlement documents to the Neighbors.

The Neighbors also introduced a number of documents relating to closing which listed First American as "approved attorney" and provided instructions to First American as "closing attorney." These documents were completed by non-attorney employees of First American.

The conduct which the Neighbors contend constituted legal malpractice by their alleged attorney included First American's failure to inform the Neighbors of the lack of access from Lot 27 to the cul-de-sac, the continuing applicability of Paragraph 6 of the sales contract, and the Neighbors' responsibility to defend against encumbrances under the deeds of trust. Had First American provided this information, the Neighbors testified, they would not have purchased their respective homes.

First American moved to strike the Neighbors' evidence, arguing that they failed to prove the elements of a legal malpractice claim: an attorney-client relationship, breach of the standard of care, and damages proximately caused by the negligence. *Allied Productions, Inc. v. Duesterdick,* 217 Va. 763, 764-65, 232 S.E.2d 774, 775 (1977). The trial court held that the Neighbors' belief that First American was their attorney was unreasonable and that the Neighbors did not prove any damage resulting from any of the alleged negligent conduct of First American.

The existence of an attorney-client relationship is essential to establishing a claim of legal malpractice. Whether a contract employing an attorney is express or implied, some indication that the advice and assistance of the attorney was sought and received is integral to the creation of the attorney-client relationship. *Nicholson v. Shockey,* 192 Va. 270, 277, 64 S.E.2d 813, 817 (1951). Here, the Neighbors testified that they did not ask First American to be their attorney; nor is there any evidence that First American communicated an agreement to act as the Neighbors' attorney. Paragraph 9 of the sales contract, on which Neighbors rely, does not refer to the seller's attorney acting as the purchaser's attorney. That paragraph only states that the purchaser may choose its own attorney but that the seller will pay the cost of title examination and settlement if those items are performed by the seller's attorney or title insurance company.

Finally, First American is a title insurance company, not a professional corporation qualified to render the professional services of an attorney pursuant to Code §§ 13.1-542 through -566. An attorney-client relationship cannot be created by a non-attorney acting as an attorney. If the non-attorney employees of First American engaged in acts reserved to attorneys, charges of unauthorized practice of law may lie, as noted by the trial court, but not claims for legal malpractice.

In light of our conclusion that the Neighbors' evidence did not establish an attorney-client relationship, we need not address the trial court's determination that the Neighbors did not establish an injury caused by the alleged negligence.

## V.

## SUMMARY

In summary, we will reverse the trial court's order holding that an easement by necessity and by contract exists in favor of Lot 27 over Lots 25 and 26, and remand those counts for further proceedings. We will affirm that portion of the judgment of the trial court dismissing the tortious interference with contract claim against Chrisland in the cross-bill of complaint. We will affirm the judgment of the trial court sustaining First American's demurrer to recovery of emotional distress damages and its ruling dismissing the breach of fiduciary duty, breach of contract, bad faith refusal to defend, and legal malpractice counts against First American in the third-party bill of complaint.

*Affirmed in part,*
*reversed in part,*
*and remanded.*