**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DYNTEL CORPORATION; DYNCORP,
Plaintiffs-Appellants,

v.

SUSAN W. EBNER,

No. 96-2369

Defendant-Appellee,

and

RUTH MORREL,
Counter-Defendant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-96-897-A)

Argued: June 5, 1997

Decided: August 5, 1997

Before WILKINSON, Chief Judge, and LUTTIG and
WILLIAMS, Circuit Judges.

_____

Affirmed and remanded with instructions by published opinion. Chief
Judge Wilkinson wrote the opinion, in which Judge Luttig and Judge
Williams joined.

_____

**COUNSEL**

**ARGUED:** Howard Barry Possick, ARENT, FOX, KINTNER,
PLOTKIN & KAHN, Washington, D.C., for Appellants. Mark Doug-

las Wegener, HOWREY & SIMON, Washington, D.C., for Appellee.
**ON BRIEF:** Howard V.B. Sinclair, ARENT, FOX, KINTNER, PLOTKIN & KAHN, Washington, D.C., for Appellants. Edward Han, Martin F. Cunniff, Kirstin A. Mueller, HOWREY & SIMON, Washington, D.C., for Appellee.

_____

## OPINION

WILKINSON, Chief Judge:

DynCorp sued attorney Susan Ebner, alleging that she had breached her ethical "duty of loyalty" to its subsidiary DynTel. The district court dismissed this claim with prejudice, finding that Dyn-Corp had failed to state a claim and had brought suit in the wrong forum. DynCorp's challenge of these findings on appeal is meritless. As the district court correctly held, any ethical charges should have been resolved in the District of Columbia, where the contracts litigation underlying the ethics debate was taking place. Furthermore, we are convinced that DynCorp waged spurious ethical warfare in Virginia in an effort to apply leverage in the underlying District of Columbia disputes. Accordingly, we affirm the judgment of the district court and remand this case for the entry of appropriate sanctions against DynCorp and its counsel.

I.

On October 31, 1994, Cincinnati Bell sold its wholly-owned subsidiary, CBIS Federal Inc., to DynCorp. CBIS provided services under contract to the federal government. Upon the sale to DynCorp, CBIS was renamed DynTel. In connection with the sale, Cincinnati Bell agreed to indemnify DynCorp for certain legal proceedings against CBIS and to defend CBIS in those matters.

In October 1995, a dispute arose between DynTel and the government regarding a defect in CBIS's performance prior to its sale to DynCorp. As a result, the government began withholding payments from DynTel. DynCorp contended that Cincinnati Bell was obligated to indemnify DynCorp for this loss -- a claim which Cincinnati Bell

2

denied. However, while reserving its rights as to DynCorp's indemnification claim, Cincinnati Bell brought an action on behalf of CBIS and DynTel in the Court of Federal Claims challenging the government's position.

Shortly thereafter, DynCorp, in response to Cincinnati Bell's continuing denial of its duty to indemnify, sought to compel arbitration before the American Arbitration Association. The dispute between the parties came before the United States District Court for the District of Columbia, which entered an order compelling arbitration.

The current dispute arises from the involvement of Cincinnati Bell attorney Susan Ebner in the various legal disputes between it and DynCorp. Ebner has been employed by Cincinnati Bell since August 31, 1992 as in-house counsel. Cincinnati Bell pays Ebner's salary and benefits, and also provides office space, secretarial support, and business expenses. In return, Ebner provides exclusive, full-time legal services to Cincinnati Bell.

Before the sale of CBIS to DynCorp, Ebner was involved in various CBIS legal matters. For example, Ebner participated as counsel for CBIS in a number of lawsuits, including federal contract litigation involving bid protests before the General Services Administration Board of Contract Appeals. However, CBIS never employed or paid Ebner, nor gave her any employment benefits.

Shortly after DynCorp bought CBIS, DynCorp informed Ebner that it would not offer her a job. In order to avoid any confusion as to whom she represented, Ebner relocated her office from the Cincinnati Bell offices which adjoined those of the newly renamed DynTel. She also informed DynCorp's legal department that she would be unavailable to give legal advice to DynTel or DynTel's employees. Ebner has never been retained by DynCorp or DynTel, and Ebner has never identified herself as counsel for DynCorp or DynTel, nor has she authorized anyone else to so identify her.

Ebner represented Cincinnati Bell in the United States District Court for the District of Columbia in the proceedings that led to arbitration, and DynCorp made no objection to her participation. However, after the order for arbitration was granted, DynCorp contacted

3

Ebner to demand that she recuse herself from the arbitration, threatening a lawsuit and a report to the D.C. Bar if she refused. In response, Ebner voluntarily submitted the issue to the D.C. Bar Legal Ethics Committee on May 3, 1996. The Chair of the Committee stated:

> [I]t does not appear that a lawyer-client relationship exists or ever existed between Attorney X [Ebner] and company C [DynCorp]. It appears that Company A [Cincinnati Bell] has been the sole employer of Attorney X, and therefore the only party with whom Attorney X has a lawyer-client relationship.

In a further attempt to resolve this dispute, Ebner and Cincinnati Bell suggested that the conflict-of-interest dispute be submitted to the arbitration panel as the first issue in the arbitration. The panel indicated that it was willing to hear the dispute if both sides agreed to submit it, but DynCorp rejected this proposal. DynCorp also rejected having the issue decided by a neutral third party such as a law professor specializing in legal ethics.

On June 28, 1996, DynCorp brought this action in the United States District Court for the Eastern District of Virginia. While DynCorp's complaint failed even to specify a distinct cause of action for professional malpractice, it sought an order enjoining Ebner from "violation of her duty of loyalty to DynTel and DynCorp" and requiring Ebner "to comply with her duty of loyalty to DynTel in connection with DynTel's litigation with the Government and her serving as counsel in such litigation." The complaint also sought unspecified damages.

On August 14, 1996, the district court, after a conference with both parties, issued an order requiring DynCorp to show cause why its complaint should not be dismissed for failure to state a claim. After a hearing, the court dismissed DynCorp's complaint with prejudice for failure to state a claim and failure to seek relief in the proper forum. DynCorp now appeals.

II.

As an initial matter, DynCorp disputes the district court's conclusion that this litigation was brought in the wrong forum. It argues that

4

since the underlying disputes were brought in different tribunals, it was most convenient to have the issue of Ebner's alleged conflict of interest settled in one separate case. Furthermore, DynCorp contends that no forum other than the Eastern District of Virginia could have provided it with a damages remedy.

The Supreme Court has identified three factors which should be considered by a court in assessing the propriety of a federal forum: "the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by concurrent forums." Colorado River Water Conservation District v. United States, 424 U.S. 800, 818 (1976) (citations omitted). All three factors support the district court's conclusion that DynCorp improperly brought suit in the Eastern District of Virginia.

The Eastern District of Virginia was clearly not the most convenient forum for this dispute. DynCorp sought a declaration that Ebner was DynTel's counsel and an injunction forbidding Ebner from appearing as Cincinnati Bell's counsel in contractual indemnification disputes with DynCorp or DynTel. In essence, DynCorp asked a federal court in Virginia to interfere with ongoing litigation in the District of Columbia. If DynCorp had any objections to Ebner's participation in the underlying disputes, it could have moved for her disqualification before any of the four forums that had substantial familiarity with the relevant facts and a direct interest in Ebner's professional conduct -- the American Arbitration Association, the Court of Federal Claims, the United States District Court for the District of Columbia, and the District of Columbia Bar. As the district court noted, "It's for the judge who is presiding over a proceeding to decide whether there is an ethical problem in the quality of the representation of the parties."

Proceeding with this litigation in the Eastern District of Virginia only added to its piecemeal character. To involve yet another tribunal in an already complicated piece of litigation was clearly unjustified given the profusion of existing forums. DynCorp rejected Ebner's attempts to resolve the ethics conflict before the arbitrators, the D.C. Bar ethics committee, or any other forum in the District of Columbia. Instead DynCorp brought suit in the Eastern District of Virginia, a

5

forum with absolutely no connection to the parties or the dispute, thus deliberately opening yet another litigation front.

We are unmoved by DynCorp's claim that it chose the Eastern District of Virginia because damages were unavailable in other forums. DynCorp offers only the conclusory assertion that "DynTel has suffered damages as a consequence of defendant's conduct, for which Ebner is liable." DynCorp's complaint identifies no specific damages suffered by the company, asking only for "damages against Ebner in an amount to be determined at trial." These conclusory assertions reveal that the damages claim was at best pro forma, and at worst was added in a calculated effort to harass Ebner and Cincinnati Bell. Indeed, as the district court held, DynCorp's failure to plead any actions by Ebner which proximately caused identifiable damages to DynCorp would have precluded a damages award under Virginia law. See Hendrix v. Daugherty, 457 S.E.2d 71, 74 (Va. 1995).

The order in which jurisdiction was obtained in other tribunals also supports the conclusion that DynCorp should not have brought suit in the Eastern District of Virginia. Both the action before the Court of Federal Claims and DynCorp's demand for arbitration before the American Arbitration Association were filed nearly six months before this complaint. In addition, we note that DynCorp never lodged any protest to Ebner's representation of Cincinnati Bell until the parties were ordered to arbitrate. The timing of DynCorp's protest strongly suggests that this suit was filed in an attempt to leverage Cincinnati Bell in the underlying contractual disputes. The fact that DynCorp fought any effort to resolve this dispute in a proper forum only bolsters this conclusion.

III.

Ordinarily, the conclusion that a case had been filed in an improper forum would lead us to dismiss it without prejudice. However, the fact that the district court dismissed appellants' claim with prejudice, and that a motion for sanctions against appellants has been pressed, requires that we review the district court's conclusion that DynCorp failed to state a claim upon which relief could be granted. We agree with the district court that DynCorp's suit lacked any legally sound or factually supportable basis.

6

The district court concluded that DynCorp's claim that Ebner violated a "duty of loyalty" to DynCorp failed to state a claim upon which relief could be granted.[1] DynCorp disputes this conclusion, arguing that under Virginia law it is clear that a lawyer owes his or her client a fiduciary duty. DynCorp's assertion is correct, as far as it goes. What DynCorp fails to recognize, however, is that breach of such a duty is but one element of a properly pleaded case for professional malpractice, which under Virginia law requires "[1] an attorney-client relationship, [2] breach of the standard of care, and [3] damages proximately caused by negligence." Carstensen v. Chrisland Corp., 442 S.E.2d 660, 668 (Va. 1994). Indeed, the Virginia Supreme Court has clearly stated that "[a] mere allegation of negligence or breach of a duty [is] insufficient to support an action for legal malpractice." Gregory v. Hawkins, 468 S.E.2d 891, 893 (Va. 1996).

DynCorp's complaint does not even use the word "malpractice," and it makes no attempt to properly plead the elements of such a claim. DynCorp argues, however, that despite the fact that its complaint nowhere refers to any malpractice claim, it intended to plead such a theory. Even if we were to accept this assertion, DynCorp's claim was still properly dismissed with prejudice. DynCorp's assertion of malpractice fails because of one basic flaw-- absolutely nothing indicates that Ebner ever entered into an attorney-client relationship with either DynCorp or DynTel. Such a relationship is fundamental to a malpractice action. Carstensen , 442 S.E.2d at 668.

The primary evidence that no attorney-client relationship existed in this instance is DynCorp's own decision not to retain Ebner as counsel to DynTel after CBIS was sold. Certainly neither DynCorp nor DynTel ever paid Ebner for any services rendered, and, indeed, Ebner testified that when she went to meet with DynCorp personnel after the

_____

[1] In support of their positions, the parties presented evidence to the district court, including various documents, correspondence, and affidavits. The district court found this evidence insufficient to support DynCorp's claim, in effect holding that even if a malpractice claim had been properly pled, Ebner would have been entitled to summary judgment. See George v. Kay, 632 F.2d 1103, 1106 (4th Cir. 1980) (where district court reviews evidence outside of the complaint on a 12(b)(6) motion, decision to dismiss may be treated as a grant of summary judgment).

sale of CBIS, she was required to sign in as a visitor, wear a visitor's badge, and be escorted at all times by a DynCorp employee. This hardly exemplifies a belief by DynCorp that Ebner was its or Dyn-Tel's attorney.

Despite the foregoing circumstances, DynCorp maintains that Ebner was DynTel's attorney. As a basis for finding an attorney-client relationship, DynCorp first relies upon the fact that Ebner did legal work for CBIS before its sale to DynCorp. This gets DynCorp nowhere. Ebner's legal work for CBIS prior to its sale cannot establish an ongoing attorney-client relationship with DynCorp after the sale. See International Electronics Corp. v. Flanzer, 527 F.2d 1288, 1292 (2d Cir. 1975). Here, as in Flanzer, there is no allegation that Ebner has attempted to use any confidences she gained while working for CBIS to the advantage of a third party. Id . Indeed, the only party she does represent, Cincinnati Bell, is the same entity which she represented when she did legal work for CBIS, which was then Cincinnati Bell's wholly owned subsidiary. Under these circumstances, Ebner's pre-sale relationship with CBIS is not a ground for disqualification or a malpractice claim.

Second, DynCorp argues that Ebner is DynTel's attorney because she was listed as "of counsel" on certain filings brought on behalf of DynTel and CBIS before the Federal Court of Claims after the sale of CBIS. DynCorp, however, conveniently ignores the fact that Ebner's participation before the Federal Court of Claims was merely to protect the interest of Cincinnati Bell as the potential indemnitor in that action. Indeed, Cincinnati Bell had retained independent counsel to represent DynTel's interests in that litigation. The papers filed in that case make this relationship clear, referring to Ebner as representing only Cincinnati Bell. It is further clear from correspondence in the record that DynCorp fully understood the nature of Ebner's role in the litigation. Letters from DynCorp's legal department to Ebner use the terms "you" and "Cincinnati Bell" interchangeably, reflecting DynCorp's perception that Ebner was Cincinnati Bell's representative. In fact, those letters are addressed to "Susan Warshaw Ebner, Esq., Special Counsel, Cincinnati Bell, Inc."

Lastly, and most tellingly, up until the arbitration order was issued, Ebner took positions adverse to DynCorp on behalf of Cincinnati Bell

8

without any objection. For example, Cincinnati Bell was required to put DynCorp on notice of conduct Cincinnati Bell regarded as violating the sale agreement. DynCorp raised no objection when Ebner acted on behalf of Cincinnati Bell to give DynCorp such notice. In addition, DynCorp did not object when Ebner represented Cincinnati Bell in the proceedings to compel arbitration. In light of its past acceptance of Ebner's representation of Cincinnati Bell, DynCorp's current contention that Ebner was DynTel's attorney all along strains credulity to the breaking point.

IV.

Finally, we address Ebner's motion for sanctions under Fed. R. App. P. 38. Ebner asserts that DynCorp brought this suit for purely predatory purposes. Our review of DynCorp's actions compels us to agree.

DynCorp first objected to Ebner's work for Cincinnati Bell when the parties were ordered to arbitrate their dispute regarding Cincinnati Bell's contractual indemnification obligations to DynCorp. At that point, DynCorp's silence on the issue was quickly replaced by a stream of threats. Despite this sudden objection, however, DynCorp was totally resistant to a convenient and efficient resolution of the dispute, rejecting several reasonable alternatives offered by Ebner. Indeed, despite the fact that DynCorp threatened to report Ebner to the D.C. Bar, it was unwilling to credit the opinion of the Chair of the D.C. Bar Legal Ethics Committee that Ebner's representation of Cincinnati Bell was entirely ethical. Rather, it insisted on pressing this lawsuit in a forum completely unrelated to the disputes underlying this case. In addition, it is clear that there was absolutely no legal or factual foundation for DynCorp's assertion that Ebner ever acted as DynTel's attorney. Given the lack of any objective basis for DynCorp's complaint and the timing of its opposition to Ebner's representation of Cincinnati Bell, we must agree with Ebner that DynCorp's staging of an ethical attack was "a thinly disguised attempt by DynCorp to gain a tactical advantage in a contractual dispute with Cincinnati Bell."

No attorney should be subject to the sort of predatory tactics demonstrated by DynCorp and its counsel in this case. The zealous repre-

sentation of one's own client need not entail devouring opposing counsel in collateral malpractice litigation. Ebner has been the victim of such an attack, and we refuse to allow suits such as this one to become a routine risk of legal practice. Courts exist to adjudicate legitimate claims, not to provide a forum for vexatious tactics whose only denouement can be professional self-destruction.

V.

For the foregoing reasons, we affirm the judgment of the district court. We grant appellee's motion for sanctions under Fed. R. App. P. 38, and we remand this case to the district court with directions to assess the amount of attorney's fees and costs incurred in connection with this appeal.[2] On remand, the district court may, in its discretion, entertain a motion for sanctions under Fed. R. Civ. P. 11 or related provisions.

<u>AFFIRMED AND REMANDED WITH INSTRUCTIONS</u>
_____

[2] No sanctions shall be awarded in connection with the argument of the Rule 38 motion itself.

10