Present:  All the Justices

DILIP R. PATEL

                        OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 011913           June 7, 2002

ANAND, L.L.C.

        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
            Clifford R. Weckstein, Judge Designate

                            I.

    In this appeal of a judgment entered in favor of a

plaintiff against a defendant in an action for fraud, breach

of fiduciary duty, and breach of contract, we consider whether

the plaintiff introduced evidence to establish that it

incurred damage to the value of its ground lease as a result

of the defendant's conduct.

                           II.

    Plaintiff, Anand, L.L.C. (Anand), a Virginia limited

liability corporation, filed its amended motion for judgment

against Clifford Kent Allison, Deep Enterprises, Inc. (Deep

Enterprises), and Dilip R. Patel.  Nayan K. Bhatt and Dinesh

K. Bhatt, members of Anand, filed a separate motion for

judgment against Allison, alleging that he committed acts

and/or omissions that constituted legal malpractice.  The

circuit court consolidated these actions and during the first

day of a jury trial, Anand and the Bhatts settled their claims

against Deep Enterprises.

At the conclusion of the trial, the jury returned a verdict in favor of Anand against Dilip Patel in the amount of $1,250,000 in damages for actual fraud, breach of fiduciary duty, and breach of contract. The jury awarded Anand $500,000 in punitive damages against Dilip Patel, and the court reduced that award to $350,000 as required by Code § 8.01-38.1. The jury returned a verdict in favor of the Bhatts against Allison for $52,500 in compensatory damages and $100,000 in punitive damages, and that verdict is not challenged in this appeal.

Dilip Patel filed a petition for appeal and assigned error to six different rulings of the circuit court. We awarded Dilip Patel an appeal limited to one assignment of error. In spite of this Court's order that limited the issues in this appeal, Dilip Patel has included in his brief, under the guise of questions presented, assignments of error that we specifically rejected. We will not consider these so-called questions presented, and we remind counsel for Dilip Patel of their duty to comply with this Court's order.

### III.

Even though the record in this case is voluminous, we will only discuss those facts that are relevant to the narrow issue presented in this appeal. Deep Enterprises is a Virginia corporation. When Deep Enterprises was formed, Dilip Patel, president and director of Deep Enterprises, owned 50%

of its stock.  Rajesh Patel, who also owned 50% of the corporation's stock, was the vice president, secretary, and a director of the corporation.

Deep Enterprises owned, as its only asset, the right to purchase a long-term ground lease from the Federal Deposit Insurance Corporation (FDIC).  The ground lease, recorded among the land records in the City of Hampton, permitted the owner of the leasehold estate to use the land and improvements that are the subjects of the lease for a term of 99 years.  An old hotel, which had been closed, was situated on the property that was the subject of the leasehold estate.

In late 1994 or sometime in 1995, Rajesh Patel approached Allison, who at that time was an attorney licensed to practice law in this Commonwealth.  Rajesh Patel informed Allison that Rajesh Patel had been the successful bidder at an auction to purchase a ground lease from the FDIC.*  The ground lease was for a period of 99 years, with 82 or 83 years remaining on the lease.

The FDIC required that Deep Enterprises pay $918,961 to purchase the ground lease, which included an $80,000 deposit that had been paid and an additional contingency fund for the removal of asbestos from the hotel situated on the property.

---

* Even though initially the Resolution Trust Corporation acquired ownership of the ground lease, the FDIC acquired the Resolution Trust Corporation's interests.

3

Dilip Patel and Rajesh Patel, purportedly acting on behalf of Deep Enterprises, were unable to raise this money and, therefore, Deep Enterprises undertook numerous dilatory efforts, including the filing of litigation in a federal district court, to delay the closing on the ground lease. Ultimately, Deep Enterprises and the FDIC reached a settlement that required Deep Enterprises to close on the ground lease contract on or before June 14, 1996, or it would forfeit the $80,000 deposit.

In the fall of 1995, Deep Enterprises caused two appraisals to be performed on the property. One appraisal, referred to as the Copeland appraisal, placed a fair market value on the property subject to the ground lease at $2,670,000. Another appraisal established the value of the same property at $500,000.

Colonial Downs, L.L.C., an entity that had constructed a horse race track in New Kent County, Virginia, had an interest in the acquisition of the ground lease. Gilbert D. Short, Colonial Downs' employee, made an offer to Deep Enterprises to purchase the ground lease in November 1995 for $1,000,000. Subsequently, Colonial Downs increased its offer to purchase the ground lease to $1,496,000.

In an effort to secure financing to close on the ground lease, in November 1995, Deep Enterprises sold 30% of its

shares to several English investors for $300,000.  However, in late May 1996, Dilip Patel and Rajesh Patel were anxious because they were still unable to raise the capital necessary to purchase the ground lease, and they were worried that Deep Enterprises would forfeit the $80,000 deposit.  They began to search frantically for additional investors.  At the same time, Allison, Rajesh Patel, and Dilip Patel participated in a scheme to deceive the English investors and convinced them to forward an additional $300,000 to Deep Enterprises under the guise that the money was necessary to obtain an extension of the June 14, 1996 closing date from the FDIC.  As a part of this scheme, Allison created a fictitious letter to lead the English investors to believe that Colonial Downs desired to purchase the ground lease promptly.

During his search for additional investors, Dilip Patel met Dinesh K. Bhatt and Nayan K. Bhatt, brothers who were physicians in Martinsville, Virginia.  Upon Dilip Patel's directions, Allison forwarded a copy of the Copeland appraisal that valued the ground lease at $2,670,000 to Dinesh Bhatt and Nayan Bhatt.

During several conversations, Dilip Patel made the following representations to Dinesh Bhatt.  The value of the ground lease was between $1,500,000 to $2,000,000.  Colonial Downs was willing to purchase the ground lease for a price in

excess of $1,000,000. Dilip Patel had paid most of a sum of $200,000 to the FDIC as a deposit for a contract to purchase the ground lease. Dilip Patel would contribute $200,000, the Bhatts would contribute $700,000, and the sum of $900,000 would be used by Deep Enterprises to acquire the ground lease. Deep Enterprises, in turn, would immediately transfer the property to Dinesh Bhatt, Nayan Bhatt, and Dilip Patel.

Even though the Bhatts had only known Dilip Patel for about three months, Dilip Patel convinced them to invest $700,000 in the plan to obtain ownership of the ground lease. Dilip Patel and Allison falsely assured Dinesh Bhatt that the shareholders of Deep Enterprises had unanimously agreed with the decision to transfer the corporation's interest in the ground lease to Dinesh Bhatt, Nayan Bhatt, and Dilip Patel. The Bhatts made their $700,000 investment, and the closing occurred on June 14, 1996. Later, Dilip Patel, acting on behalf of Deep Enterprises, but without the consent or knowledge of the English minority shareholders, conveyed Deep Enterprises' interest in the ground lease to Dinesh Bhatt, Nayan Bhatt, and Dilip Patel. Anand, a limited liability corporation formed by Dilip Patel and the Bhatts, acquired the ground lease. Subsequently, the English investors learned that they had been defrauded and contacted Dinesh Bhatt, who

was unaware of their involvement or the fraudulent acts of Allison, Rajesh Patel, and Dilip Patel.

IV.

Dilip Patel argues that Anand failed to present evidence that would permit the jury to conclude that Anand suffered damage to its interest in the ground lease as a result of Patel's fraudulent acts. Patel contends that Anand failed to prove any loss between the difference in the value of the ground lease that it bargained for and the value of the ground lease that it actually received. Responding, Anand asserts that it presented evidence of the amount it paid for the ground lease, $900,000, and the amount of offers that prospective purchasers made for the ground lease. Anand also argues that it presented evidence regarding the renovation costs for the hotel on the property and the amount it paid in lease payments and in franchise and application fees. Anand also says that it presented evidence of the amount of mechanic's liens that encumbered the property, as well as evidence of litigation expenses from a separate lawsuit that challenged its legal interest in the ground lease.

We stated in Carstensen v. Chrisland Corp., 247 Va. 433, 444, 442 S.E.2d 660, 666-67 (1994), the following principle that is equally pertinent here:

"In Long & Foster Real Estate, Inc. v. Clay, 231 Va. 170, 343 S.E.2d 297 (1986), we considered

7

the measure of damages in a case where a fiduciary withheld information from its principal which, if disclosed, would have caused the principal to reject the transaction. In that case, we held that the measure of damages is the difference between the value of the item bargained for and the value of the item actually received. Id. at 175-76, 343 S.E.2d at 300-01, cited with approval in, Duvall, Blackburn, Hale & Downey v. Siddiqui, 243 Va. 494, 498, 416 S.E.2d 448, 450 (1992)."

We applied this principle in Prospect Development Co. v. Bershader, 258 Va. 75, 91, 515 S.E.2d 291, 300 (1999):

"Generally, a person who acquired property by virtue of a commercial transaction and who has been defrauded by false representations is entitled to recover as damages the difference between the actual value of the property at the time the contract was made and the value that the property would have possessed had the representation been true."

Applying this established principle, we hold that Anand failed to present evidence that would permit the jury to conclude that Anand suffered damage because it failed to obtain clear title to the ground lease in the fall of 1996. Anand failed to present evidence of the actual value of the ground lease that it bargained for – a ground lease which would have had a clear title – and the value of the ground lease that it actually received – a ground lease with a cloud on the title. The record simply does not contain this evidence.

Upon our review of the record, we hold that the only legally cognizable item of compensatory damage that Anand presented at trial was the sum of $23,148.77 that it incurred

8

in litigation expenses related to a lawsuit that Deep Enterprises filed against Anand in the Circuit Court of the City of Hampton.  In that lawsuit, Deep Enterprises challenged Anand's legal interest in the ground lease.  We observe that a party, required to act in the protection of his interests by bringing or defending an action against a third person, may recover attorney's fees incurred in that action against the original entity or person who breached a duty owed, in this instance, Dilip Patel.  Prospect Development Co., 258 Va. at 92, 515 Va. at 301; Fidelity Nat'l Ins. Co. v. Southern Heritage Ins., 257 Va. 246, 253-54, 512 S.E.2d 553, 557-58 (1999); Owen v. Shelton, 221 Va. 1051, 1055-56, 277 S.E.2d 189, 192 (1981); Hiss v. Friedberg, 201 Va. 572, 577-78, 112 S.E.2d 871, 875-76 (1960); see Restatement (Second) of Torts § 914 (1977).  And, we note that Dilip Patel did not challenge this element of damage in the circuit court.

Anand contends, however, that it incurred the following compensable damages as a result of Dilip Patel's acts:  costs incurred in the renovation of the hotel, the costs of the ground lease payments, the costs associated with franchise and application fees for the hotel, and the costs of mechanic's liens that encumbered the property.  We disagree.  Anand failed to establish that Dilip Patel's actions were a proximate cause of these costs.  See Murray v. Hadid, 238 Va.

9

722, 730-31, 385 S.E.2d 898, 903-04 (1989).  For example, Anand incurred costs and expenses associated with the ground lease payments and fees, as well as renovation expenses, in its attempt to develop the hotel.  Additionally, the mechanic's liens were not proximately caused by any act committed by Dilip Patel.

V.

We will reverse that portion of the judgment that included damages that are not recoverable and we will reduce the jury's verdict of compensatory damages to $23,148.77, and we will enter final judgment in favor of Anand.  We will also enter final judgment in favor of Anand on the punitive damage award because that award is not the subject of any assignment of error in this appeal.

Affirmed in part,<br>
reversed in part,<br>
modified in part,<br>
and final judgment.