Sandra Cartwright, appellant, v. State of
Nebraska et al., appellees.
___ N.W.2d ___

Filed August 9, 2013.    No. S-12-749.

1.  **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower
    court's grant of summary judgment if the pleadings and admitted evidence show
    that there is no genuine issue as to any material facts or as to the ultimate infer-
    ences that may be drawn from the facts and that the moving party is entitled to
    judgment as a matter of law.
2.  ____: ____. In reviewing a summary judgment, an appellate court views the
    evidence in the light most favorable to the party against whom the judgment was
    granted, and gives that party the benefit of all reasonable inferences deducible
    from the evidence.
3.  **Summary Judgment: Proof.** The party moving for summary judgment has the
    burden to show that no genuine issue of material fact exists and must produce
    sufficient evidence to demonstrate that the moving party is entitled to judgment
    as a matter of law.
4.  **Summary Judgment: Evidence: Proof.** After the movant for summary judg-
    ment makes a prima facie case by producing enough evidence to demonstrate
    that the movant is entitled to judgment if the evidence was uncontroverted at
    trial, the burden to produce evidence showing the existence of a material issue
    of fact that prevents judgment as a matter of law shifts to the party opposing
    the motion.
5.  **Summary Judgment.** Conclusions based upon guess, speculation, conjecture, or
    a choice of possibilities do not create material issues of fact for purposes of sum-
    mary judgment.
6.  ____. If a genuine issue of fact exists, summary judgment may not properly
    be entered.
7.  **Civil Rights.** Title VII of the Civil Rights Act of 1964, as amended, prohib-
    its employment discrimination on the basis of race, color, religion, sex, or
    national origin.
8.  ____. Title VII of the Civil Rights Act of 1964 prohibits both intentional dis-
    crimination, known as disparate treatment, as well as practices that, although
    they are not intentional discrimination, have a disproportionately adverse effect
    on minorities, which is known as disparate impact.
9.  **Employer and Employee: Discrimination.** Disparate impact occurs when an
    employer uses an employment practice that has a disproportionately adverse
    effect on protected groups.
10. **Employer and Employee: Discrimination: Proof.** To prove a prima facie case
    of disparate impact, the plaintiff must show (1) the existence of a statistically
    significant disparity among members of different groups affected by employment
    decisions; (2) the existence of a specific, facially neutral employment practice;
    and (3) a causal nexus between the specific, facially neutral employment practice
    and the statistical disparity.

11. **Discrimination: Proof.** To recover under the disparate impact theory, plaintiffs must do more than merely prove circumstances raising an inference of a discriminatory impact; they must prove the discriminatory impact at issue.

12. ____: ____. To recover under the disparate impact theory, plaintiffs must point to a clearly identifiable practice and prove its impact.

Appeal from the District Court for Lancaster County: PAUL D. MERRITT, JR., Judge. Affirmed.

Kathleen M. Neary, of Vincent M. Powers & Associates, for appellant.

Jon Bruning, Attorney General, and Stephanie Caldwell for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

McCORMACK, J.

## NATURE OF CASE

Sandra Cartwright filed suit against the State of Nebraska and Dave Heineman, Gerry Oligmueller, and Randy Palmer, in their individual capacities, in the Lancaster County District Court, alleging racial discrimination and a denial of equal protection under 42 U.S.C. §§ 1981 and 1983 (2006) and title VII of the Civil Rights Act of 1964 (Title VII).[1] The district court granted the motion for summary judgment on all counts in favor of all defendants. Cartwright now appeals.

## BACKGROUND

Cartwright, who is African-American, was employed by the Nebraska Department of Health and Human Services from 1990 until her retirement in 2009. At all relevant times, Cartwright resided in Omaha, ZIP code 68111.

The State is self-insuring as to state employee health care coverage. Contracts for the administration of health care coverage are awarded every 2 years to one or more successful bidders. In 2006, the State health care coverage plan contracts were open for bids for the 2007 and 2008 benefit years. In

---

[1] See title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (2006 & Supp. V 2011).

May 2006, the State issued a "Request for Proposal Number 1270Z1," which sought proposals for the administration of the State's group health insurance plans. After receiving and scoring proposals, contracts were awarded to Mutual of Omaha (later purchased by Coventry HealthCare of Nebraska) and Blue Cross Blue Shield of Nebraska.

In 2007 and 2008, the State began using ZIP code coverage areas for the employee health care coverage plans to combat significant increases in health care costs. The State was informed by a contract actuary consultant that the presence of a viable health maintenance organization (HMO) network in the metropolitan ZIP codes, located primarily in the Omaha and Lincoln, Nebraska, metropolitan areas, could allow for a more cost-efficient plan in those areas. The ZIP code approach was a convenient way to define the geographical areas where the provider networks existed. By implementing the ZIP code approach, the State was able to minimize cost increases to both employees and the State.

The two state employee health care coverage plans offered under the Mutual of Omaha contract to the employees who resided in areas with ZIP codes starting with 680, 681, and 685 were an HMO plan and a point-of-service (POS) plan. According to Palmer, the employee benefits administrator for the State at the time, these plans were designed to be the equivalent of the HMO and POS plans offered under the Blue Cross Blue Shield of Nebraska contract to state employees who resided in all of the other ZIP codes of Nebraska. The difference was that the Mutual of Omaha plans were true HMO and POS plans, whereas the Blue Cross Blue Shield plans were not considered to be true HMO and POS plans because they were not administered with a true HMO and POS network, but, rather, a preferred provider organization (PPO) network. This distinction, according to Palmer, allowed the State and its employees to save on premiums in their network.

In the end, four health coverage plan designs were available for each state employee regardless of the ZIP code of the employee's residence. Two plans were administered by Mutual of Omaha in the metropolitan Omaha and Lincoln areas, with ZIP codes starting with 680, 681, and 685. In all other ZIP

code areas, Blue Cross Blue Shield offered all four health care coverage plans. During the open enrollment process for benefit year 2007, all State employees residing in the ZIP codes starting with 680, 681, and 685, including Cartwright, had the option to select one of the following medical plans: Mutual of Omaha POS, Mutual of Omaha HMO, Blue Cross Blue Shield PPO, and Blue Cross Blue Shield "High Deductible" PPO. The PPO plans administered by Blue Cross Blue Shield were available to all employees regardless of where they resided. However, employees who resided in ZIP codes starting with 680, 681, and 685 were excluded from Blue Cross Blue Shield "BlueSelect" HMO plan and the Blue Cross Blue Shield "BlueChoice" POS plan.

During open enrollment for benefit year 2007, Cartwright selected the Blue Cross Blue Shield PPO health insurance plan. For the 2008 benefit year, Cartwright selected the Blue Cross Blue Shield "High Deductible" PPO health insurance plan. For the benefit year 2009 and beyond, the ZIP code method was discontinued.

Cartwright filed the instant lawsuit because she was denied the opportunity to enroll with the health insurance carrier that had insured her prior to 2007 due to the ZIP code exclusion plan. Cartwright alleges that she was discriminated against on the basis of her race because most African-American employees resided in the three excluded ZIP codes and they were offered substandard health insurance based upon the ZIP codes associated with their residential addresses.

In her complaint, Cartwright alleged that approximately 450 African-American citizens are employed by the State and that 96 percent of the 450 African-American employees resided in the ZIP codes starting with 680, 681, and 685. She further alleged that the "health insurance coverage offered through the Mutual of Omaha Insurance was less satisfactory, less comprehensive, provided fewer services, fewer providers, less coverage and less treatment options than the health insurance plan offered in all other zip codes." In her deposition, Cartwright stated that as a result of this discriminatory practice, she suffered an increase in blood pressure, had to increase her insulin and blood pressure medication, suffered headaches, and had to

take time off work due to health-related matters. Cartwright also had to make additional visits to her physician, purchase more prescription medications and diabetes test equipment, and suffered from back spasms as a result of the stress related to the discriminatory practice.

The State and the individual defendants filed a motion for summary judgment on the three causes of action found in the final amended complaint. The first cause of action was based upon 42 U.S.C. § 1981 and alleged that the ZIP code-based health insurance coverage plan discriminated on the basis of race. The second cause of action was under 42 U.S.C. § 1983 and alleged that Cartwright was denied equal protection of the law. The third claim was brought under Title VII, and it alleged that there was a disparate impact upon her as an African-American employee of the State.

The district court granted the motion for summary judgment on all causes of action. Regarding the Title VII disparate impact claim, the district court found that the State and the individual defendants had presented prima facie evidence that neither Cartwright nor any other State employee was truly harmed or adversely impacted by the ZIP code-based health insurance coverage because the evidence is that all of those health insurance coverage plans were designed to be equivalent. The district court further noted that other than Cartwright's own deposition testimony, she provided virtually no evidence that any State employee was harmed or adversely impacted. The district court rejected her testimony and stated that "'[c]onclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment.'"[2] Therefore, the district court concluded that Cartwright did not adduce any credible evidence of adverse impact.

## ASSIGNMENT OF ERROR

Cartwright argues that the district court erred in granting the motion for summary judgment on her claim of disparate impact arising under Title VII, because there were genuine issues of

[2] See *Recio v. Evers*, 278 Neb. 405, 771 N.W.2d 121 (2009).

material fact and the State and individual defendants were not entitled to judgment as a matter of law. Cartwright does not appeal the district court's granting of summary judgment on the 42 U.S.C. §§ 1981 and 1983 claims.

## STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[3] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[4]

## ANALYSIS

[3-6] The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law.[5] After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion.[6] Conclusions based upon guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment.[7] If a genuine issue of fact exists, summary judgment may not properly be entered.[8]

---

[3] *Jeremiah J. v. Dakota D.*, 285 Neb. 211, 826 N.W.2d 242 (2013).

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Darrah v. Bryan Memorial Hosp.*, 253 Neb. 710, 571 N.W.2d 783 (1998).

[8] *Jeremiah J. v. Dakota D., supra* note 3.

[7,8] Cartwright's only remaining cause of action is brought under Title VII, which, as amended, prohibits employment discrimination on the basis of race, color, religion, sex, or national origin.[9] Title VII prohibits both intentional discrimination, known as disparate treatment, as well as practices that, although they are not intentional discrimination, have a disproportionately adverse effect on minorities, which is known as disparate impact.[10]

[9,10] Disparate impact occurs when an employer uses an employment practice that has a disproportionately adverse effect on protected groups.[11] Thus, to prove a prima facie case of disparate impact, the plaintiff must show (1) the existence of a statistically significant disparity among members of different groups affected by employment decisions; (2) the existence of a specific, facially neutral employment practice; and (3) a causal nexus between the specific, facially neutral employment practice and the statistical disparity.[12]

[11,12] We have held that in order to recover under the disparate impact theory, plaintiffs must do more than merely prove circumstances raising an inference of a discriminatory impact; they must prove the discriminatory impact at issue.[13] That is, they must point to a clearly identifiable practice and prove its impact.[14]

In *Allen v. AT&T Technologies*,[15] we affirmed the district court's dismissal of a disparate impact case under Title VII because the plaintiffs failed to prove how they were negatively

---

[9] See *Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 174 L. Ed. 2d 490 (2009).

[10] *Id.*

[11] *Id.*

[12] *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S. Ct. 2115, 104 L. Ed. 2d 733 (1989); *Bennett v. Nucor Corp.*, 656 F.3d 802 (8th Cir. 2011), *cert. denied* ___ U.S. ___, 132 S. Ct. 1807, 182 L. Ed. 2d 619 (2012), and ___ U.S. ___, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (2012); *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263 (11th Cir. 2000).

[13] See *Allen v. AT&T Technologies*, 228 Neb. 503, 423 N.W.2d 424 (1988).

[14] See *id.*

[15] *Id.*

impacted.[16] The plaintiffs asserted that the emphasis AT&T Technologies places on education had a disparate impact upon them, because persons 40 years of age and older are less likely to possess post-high-school educations than are younger persons.[17] In the opinion, we noted that the plaintiffs must be able to isolate clearly identifiable employment requirements or criteria which results in a less favorable impact on the protected group.[18] Although education was clearly an identifiable employment requirement, the plaintiffs failed to present evidence from which any fact finder could conclude that but for the lack of a higher education, any plaintiff would have been promoted.[19] We held that such a failure to show a causal connection between the factor at issue and the lack of promotion defeats recovery under the disparate impact theory.[20]

Here, Cartwright properly pleaded that the ZIP code exclusion had an unfavorable impact on those excluded. She alleged that nonexcluded ZIP code employees were "offered a preferable and significantly better health insurance plan." She alleged that the Mutual of Omaha health insurance she was offered was "less satisfactory, less comprehensive, provided fewer services, fewer providers, less coverage and less treatment options than the health insurance plan offered in all other zip codes." She further alleged that the offered insurance

> failed to provide an in-plan rate coverage to employees' children who attended college out-of-state, failed to provide a nationwide provider network, failed to provide in-plan rates for specific health issues that required expertise not readily available in Nebraska and other adverse components and/of [sic] coverage and/or costs that are not specifically set forth herein.

She alleged such differences resulted in negative consequences to her health and finances.

---

[16] Id.

[17] Id.

[18] Id.

[19] Id.

[20] Id.

However, in response, the State and the individual defendants filed a motion for summary judgment. In support of their motion, they offered substantial evidence that the Mutual of Omaha plans and the Blue Cross Blue Shield plans were equivalent in terms of coverage and benefits.

The State and the individual defendants offered the affidavit of Palmer. Palmer averred that the contract requirements for Mutual of Omaha and Blue Cross Blue Shield mandated equivalency of coverage in an effort to maintain equality of benefits and to avoid any negative coverage impact for State employees based on their residential ZIP codes. Subsequent to the awarding of the contracts to Mutual of Omaha and Blue Cross Blue Shield, Palmer convened meetings with representatives of each contractor and members of his staff. At these meetings, the HMO and POS coverage plans offered by each contractor were reviewed, point by point, to ensure to the greatest extent possible that these plans would be equivalent, regardless of which contractor administered the respective health coverage plans and regardless of the residential ZIP codes of the employees. Palmer avers in his affidavit that no potential discriminatory impact for any particular group of State employees was ever identified as a part of the contract award process or in the design of the health plans.

Additionally, the State and the individual defendants offered the affidavit of Paula Fankhauser, the employee benefits administrator for the State. According to Fankhauser, the Mutual of Omaha HMO and the Blue Cross Blue Shield "BlueSelect" HMO plans had identical benefit designs. Likewise, the Mutual of Omaha POS and the Blue Cross Blue Shield "BlueChoice" POS plans had identical benefits. In support of her testimony, Fankhauser prepared a spread sheet comparing State employee health plan options for 2007 and 2008.

The spread sheet compares the "BlueChoice" plan not offered in ZIP codes starting with 680, 681, and 685 with the Mutual of Omaha POS, which was available in those ZIP codes. For the in-network plans, both offer identical coverage and benefits. Neither plan requires a deductible, and both set an out-of-pocket maximum at $1,500 for individuals and $3,000 for the family. Both plans have identical copay and

coinsurance benefits for every medical service provided. This includes: office visits; annual examinations; annual eye examinations; surgery, radiology, laboratory, and chemotherapy; inpatient hospitalization; outpatient surgery; outpatient surgical center; "Well baby" examinations; mammograms; Pap smears; maternity services; allergy testing and shots; child immunizations (through age 6); ambulance; urgent care center; hospital emergency room; skilled nursing facility; durable medical equipment; rehabilitation services (physical therapy, chiropractic services, occupational therapy, and speech therapy); home health care and hospice; inpatient mental illness and substance abuse treatment; outpatient mental illness and substance abuse treatment; serious inpatient mental illness; and serious outpatient mental illness.

The same holds true when comparing the "BlueChoice" out-of-network plan and the Mutual of Omaha POS out-of-network plan. Each of the above categories is identical for the out-of-network plans. Likewise, the "BlueSelect" plan, not available in ZIP codes starting with 680, 681, and 685, is identical to the Mutual of Omaha HMO. The only difference on the spread sheet is the premiums paid. However, across the board, the premiums paid in ZIP codes starting with 680, 681, and 685 were cheaper than the Blue Cross Blue Shield counterparts.

Presented with this evidence, the district court concluded that the burden shifted to Cartwright to show the existence of a material issue of fact. We agree. The evidence presented by the State and the individual defendants established that the plans offered in the excluded ZIP codes were equivalent to the plans offered statewide. This entitled the State and the individual defendants to judgment as a matter of law. However, before the district court could enter judgment, the burden shifted to Cartwright to produce evidence showing the existence of a material issue of fact that would prevent judgment.[21]

In response, Cartwright produced as evidence her deposition testimony and relied on deposition statements made by

---

[21] See *Professional Mgmt. Midwest v. Lund Co.*, 284 Neb. 777, 826 N.W.2d 225 (2012).

Palmer and Mike McCrory, who was the director of personnel for the State. Cartwright alleges in her deposition that the plans offered to her were less comprehensive, provided smaller networks, did not cover medical care for dependents received out-of-network, offered fewer and inferior specialists, and covered less of her medical expenses. Cartwright attempts to use the deposition testimony of Palmer and McCrory to support her conclusion.

We first note, as an overview, that Cartwright offered very little evidence demonstrating the inferiority of the plans available to her. Her own deposition testimony is largely conclusory, based on her own opinions and speculation.

Second, in her deposition and brief, Cartwright repeatedly makes the mistake of comparing the wrong insurance plans. For instance, Cartwright states in her brief that "[t]he Mutual of Omaha and Coventry plans offered to . . . Cartwright in 2007 and 2008 did not have the comprehensive in and out of network providers and paid fewer benefits than the *plan previously held* by Cartwright."[22] Such a comparison is irrelevant. Only the plans offered in 2007 and 2008 are relevant to the determination of whether the excluded ZIP codes received inferior plans. Further, she often compares the wrong Blue Cross Blue Shield plan with the wrong Mutual of Omaha plan. Doing so creates an incorrect impression that the plans she was offered were inferior. For purposes of this summary judgment, the appropriate comparison is to contrast "BlueChoice" with Mutual of Omaha POS and "BlueSelect" with Mutual of Omaha HMO.

With this in mind, we will now address Cartwright's evidence that the plans she was offered were inferior. In her deposition, Cartwright repeatedly testified that the insurance coverage offered by Mutual of Omaha was inferior to the plans offered statewide. Her testimony was that the plans offered were less comprehensive and had inferior access to specialists. But, in her deposition and in her brief, Cartwright failed to give evidence establishing such allegations as true. There was no reference to the insurance plans or use of expert

---

[22] Brief for appellant at 15 (emphasis supplied).

testimony. The only probative evidence presented on this issue, which includes the testimony of Palmer and Fankhauser, established that the benefits were designed to be, and were in fact, equivalent. Cartwright never directly challenged this evidence. Therefore, in light of the State's evidence, Cartwright's testimony amounts to nothing more than speculation, which is insufficient to create a genuine issue of material fact.

In addition, Cartwright attempted to use the deposition testimony of Palmer and McCrory to establish that the Mutual of Omaha plans did not cover medical care for dependents received out of network. In her brief, Cartwright stated that "McCrory admitted that the Mutual HMO lacked provider networks in greater Nebraska."[23] Cartwright also stated that Palmer "admitted that the HMOs offered in Zip Codes 680, 681 and 685 in 2007-2008 did not provide out of service or out of network benefits to their insureds."[24] Although these statements in a vacuum are true, Cartwright fails to take into account that the equivalent "BlueSelect" plan offered by Blue Cross Blue Shield was also limited to "In-Network" only and that both plans did not have out-of-network coverage. In her brief, she also states that the Mutual of Omaha POS plan does not provide out-of-network benefits. This is wrong; the Mutual of Omaha POS plan specifically provided for out-of-network coverage. This out-of-network coverage was identical, according to Palmer and Fankhauser, as the coverage provided by "BlueChoice."

Cartwright failed to provide evidence, other than conclusions from her own testimony, on why "BlueSelect's" in-network plan was superior to Mutual of Omaha's in-network HMO plan or on why "BlueChoice's" out-of-network coverage was preferable to Mutual of Omaha's POS coverage. In fact, the only evidence in the record is from Palmer and Fankhauser, which established that the benefits and coverage are the same. Cartwright has failed to meet her burden, after it had shifted to her, of establishing a material issue of fact on whether the plans she was offered were inferior.

---

[23] *Id.* at 12.

[24] *Id.*

Cartwright has also failed to establish that the alleged inferiorities of the plans she was offered resulted in any adverse impact to her. Cartwright alleged that her post-2006 health insurance did not cover her mammogram or Pap smear, did not allow access to some specialists, did not cover her insulin prescriptions, and classified the doctor treating her back condition as an "out-of-network provider." Cartwright's allegations fail because she never provided evidence that the plans she was excluded from would have provided these services. Rather, she repeatedly referenced that these were covered under her previous Blue Cross Blue Shield policy, which is irrelevant. Her failure to provide evidence that the plans she was excluded from would have covered the above-mentioned medical services is fatal to her claim. Cartwright failed to establish, with evidence, any adverse impact to being excluded.

In sum, we find that the State and the individual defendants presented sufficient evidence to shift the burden to Cartwright. After it shifted, Cartwright failed to meet her burden to show the existence of a material issue of fact on the issues of whether the plans offered in ZIP codes starting with 680, 681, and 685 were inferior and whether the alleged inferiorities resulted in an adverse impact. The evidence provided in the record, even when viewed in the light most favorable to Cartwright, established that the State and the individual defendants were entitled to judgment as a matter of law under a Title VII disparate impact claim.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.