Brad Woodle and Chase Woodle, appellants, v.
Commonwealth Land Title Insurance Company,
a Nebraska corporation, and Omaha
Title & Escrow, Inc., a Nebraska
corporation, appellees.

___ N.W.2d ___

Filed April 11, 2014.    No. S-13-111.

1. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

2. **Insurance: Contracts.** An insurance policy is a contract, and when the facts are undisputed, whether or not a claimed coverage exclusion applies is a matter of law.

3. **Contracts: Appeal and Error.** The interpretation of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.

4. **Pleadings: Words and Phrases.** The use of specific language asserting defenses is not required, nor is it necessary to state a defense in any particular form, as long as the facts supporting the assertion are stated and sufficient facts are pled to constitute the raising of the alleged defense.

5. **Appeal and Error.** In the absence of plain error, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.

6. **Easements: Words and Phrases.** An easement is an interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose.

7. **Easements: Real Estate: Conveyances.** An easement by implication from former use arises only where (1) the use giving rise to the easement was in existence at the time of the conveyance subdividing the property, (2) the use has been so long continued and so obvious as to show that it was meant to be permanent, and (3) the easement is necessary for the proper and reasonable enjoyment of the dominant tract.

Appeal from the District Court for Sarpy County: Max Kelch, Judge. Affirmed.

Ronald E. Reagan, Richard W. Whitworth, and A. Bree Swoboda, Senior Certified Law Student, of Reagan, Melton & Delaney, L.L.P., for appellants.

John D. Stalnaker and Robert J. Becker, of Stalnaker, Becker & Buresh, P.C., for appellees.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Wright, J.

## NATURE OF CASE

Brad Woodle and Chase Woodle commenced this action against Commonwealth Land Title Insurance Company (Commonwealth) and Omaha Title & Escrow, Inc., to recover fees, costs, and indemnification pursuant to a policy of title insurance issued by Commonwealth insuring property owned by the Woodles. The district court concluded as a matter of law that Commonwealth had no duty to indemnify or defend the Woodles concerning implied easements on the property. It sustained Commonwealth's motion for summary judgment and dismissed the action with prejudice. The Woodles now appeal the court's dismissal concerning Commonwealth, and Omaha Title & Escrow is not at issue in this appeal. We affirm.

## SCOPE OF REVIEW

[1] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Cartwright v. State*, 286 Neb. 431, 837 N.W.2d 521 (2013).

[2] An insurance policy is a contract, and when the facts are undisputed, whether or not a claimed coverage exclusion applies is a matter of law. *Miller v. Steichen*, 268 Neb. 328, 682 N.W.2d 702 (2004), *appeal after remand sub nom. Fokken v. Steichen*, 274 Neb. 743, 744 N.W.2d 34 (2008).

[3] The interpretation of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below. *Fitzgerald v. Community Redevelopment Corp.*, 283 Neb. 428, 811 N.W.2d 178 (2012).

## FACTS

On November 28, 2008, the Woodles entered into a contract to purchase real property described as "Lot 2, Sun Country Addition, an addition in Sarpy County, Nebraska" (Lot 2). At the time of purchase, Commonwealth issued its policy of insurance. Lot 2 was subject to two express easements that were executed in favor of the owners of the adjacent lots in Sun Country Addition (collectively Lots 1 and 3).

After purchasing Lot 2, the Woodles filed a quiet title action against the owners of Lots 1 and 3, seeking a declaration that the express easements granted in favor of Lots 1 and 3 (which were specifically excepted from coverage under the policy issued by Commonwealth) were invalid. The owners of Lot 1 (William and Sandy Curlis) and Lot 3 (David and Susan Zajac) filed counterclaims asserting that the express easements were valid or, in the alternative, they were entitled to easements or ownership of the disputed property under an implied easement, adverse possession, or easement by proscription. The Curlises used the west part of the driveway located on Lot 2 to access their garage, shed, septic tank, and propane tank. Their use of the western portion of the driveway loop for ingress and egress has been continuous. The Zajacs have exercised continuous use of a portion of the driveway on Lot 2 to access the south and west sides of their cabinet shop located on Lot 3. (These easements would allow ingress and egress for Lots 1 and 3 in the same manner whether the easements were express or implied.) When the counterclaims were filed, the Woodles submitted to Commonwealth a claim for defense. Commonwealth denied the claim, asserting there was no coverage under the policy for indemnification or defense of any of the counterclaims.

In the quiet title action, the court found that Lot 2 was advertised for sale at auction to be held on November 25, 2008. Sandy Curlis and the Woodles attended an open house on the property 2 days before the auction was to be held. The next day, Sandy Curlis requested a preliminary title search and was advised that there was a 1992 easement on the west side which was of questionable validity because of a later quitclaim deed and another easement document on file

pertaining to the east side, which easement was also of questionable validity.

According to Sandy Curlis, on the evening of November 24, 2008, she and the Woodles went to the property and met with David Zajac, who informed them that both of the adjoining lot owners had easements to use portions of the driveway on Lot 2. Sandy Curlis and the Woodles saw the existing drives on both the east and west sides of the lot prior to the auction and knew they were used by someone. In the quiet title action, the Woodles alleged that previous written easements on Lot 2 had been extinguished, but the owners of Lots 1 and 3 asserted that they had continuing rights to use and travel upon Lot 2, which cast a cloud upon the title of Lot 2.

The district court extinguished the express easements and denied the counterclaims of the owners of Lots 1 and 3 regarding express easement, public easement, and adverse possession. However, the court concluded that the owners of Lots 1 and 3 possessed implied easements for ingress and egress arising from prior use.

While the quiet title action was pending, the Woodles filed the present action against Commonwealth, seeking a determination that Commonwealth had breached its duty under the title insurance policy by refusing to provide a defense to the counterclaims and seeking damages for any diminution in value of Lot 2 as a result of the counterclaims filed in the underlying action. Commonwealth answered, asserting that the policy, by its terms, did not provide coverage for the counterclaims in the quiet title action. The relevant portions of the policy provide as follows:

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Nebraska corporation . . . insures, as of Date of Policy . . . against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.

. . . .

The following matters are expressly excluded from the coverage of this policy, and [Commonwealth] will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

. . . .

3. Defects, liens, encumbrances, adverse claims, or other matters

(a) created, suffered, assumed, or agreed to by the Insured Claimant;

. . . .

(d) attaching or created subsequent to Date of Policy . . . .

. . . .

## OWNER'S POLICY
## SCHEDULE B
## EXCEPTIONS FROM COVERAGE

. . . .

This policy does not insure against loss or damage (and [Commonwealth] will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Rights or claims of parties in possession not shown by the public records.

2. Unrecorded easements, discrepancies or conflicts in boundary lines, shortage in area and encroachments which an accurate and complete survey would disclose.

. . . .

7. Easement recorded March 17 1993 . . . granted to Owners of Lots 2 and 3 Sun Country over a portion of property described therein for Ingress and Egress.

8. Lot Line Adjustment recorded June 17 2003 . . . granted to Owners of Lots 2 and 3 Sun Country over a portion of property described therein for Lot line adjustment to Plat.

9. Right of Way Easement dated July 18, 2002, recorded April 30, 2008 . . . .

Commonwealth moved for summary judgment, asserting that under "Exclusion 3(d)," the policy did not provide coverage for "defects, liens, encumbrances, adverse claims or

other matters . . . created subsequent to the date of policy."
The district court found that although the implied easements
may have existed prior to judgment, neither easement had
significance, such as enforceability, until the easement was
judicially recognized by a court judgment. It concluded that
the easements attached when the judgment was entered in
the quiet title action, which judgment held that implied ease-
ments existed over Lot 2 in favor of Lots 1 and 3. Because
there was no court order or judgment in place establishing
either easement by implication as of the date of the title
insurance policy, Exclusion 3(d) applied, and as a result,
Commonwealth was not required to provide a legal defense
to the Woodles in regard to the counterclaim filed by the
owners of Lots 1 and 3. The court concluded that there was
no genuine issue as to any material fact and that therefore,
Commonwealth was entitled to judgment as a matter of
law. It sustained the motion for summary judgment filed by
Commonwealth and dismissed the cause of action against
Commonwealth with prejudice.

The Woodles timely appealed. We moved the case to our
docket pursuant to our authority to regulate the dockets of this
court and the Nebraska Court of Appeals. See Neb. Rev. Stat.
§ 24-1106(3) (Reissue 2008).

## ASSIGNMENTS OF ERROR

The Woodles allege, restated, that the district court erred in
relying on Exclusion 3(d), which was not raised as an affirma-
tive defense by Commonwealth; concluding that the implied
easements did not attach until they were judicially recognized;
finding no coverage under the policy; sustaining summary
judgment in favor of Commonwealth; and overruling sum-
mary judgment in their favor.

## ANALYSIS

The Woodles' claims against Commonwealth were based
upon their expenses incurred in the quiet title action described
above. They argue that because the title insurance policy did
not expressly exclude the implied easements, Commonwealth
breached its contract by not defending and indemnifying the

Woodles regarding the counterclaims established by the owners of Lots 1 and 3 concerning the implied easements over Lot 2.

### EXCLUSION 3(d) OF TITLE
### INSURANCE POLICY

The Woodles claim the district court erred in relying upon Exclusion 3(d) of the title insurance policy, because Commonwealth had not raised Exclusion 3(d) in its denial of coverage or as an affirmative defense. The Woodles contend they were not put on notice that Commonwealth intended to argue Exclusion 3(d) until argument was presented before the district court.

Commonwealth asserts that the Woodles failed to raise this issue in the district court, despite Commonwealth's reliance on Exclusion 3(d) at three prior hearings on motions for summary judgment. Commonwealth raised Exclusion 3(d) at these hearings, and the Woodles did not object to Commonwealth's reliance on Exclusion 3(d) or assert that Commonwealth should be barred from raising it as a defense. Commonwealth points out that even if it should have pled Exclusion 3(d) as an affirmative defense, had the Woodles objected during the proceedings below, Commonwealth would have moved to amend its answer and likely would have been granted leave to do so. We agree.

[4] The use of specific language asserting defenses is not required, nor is it necessary to state a defense in any particular form, as long as the facts supporting the assertion are stated and sufficient facts are pled to constitute the raising of the alleged defense. *Gies v. City of Gering*, 13 Neb. App. 424, 695 N.W.2d 180 (2005). See, also, *Diefenbaugh v. Rachow*, 244 Neb. 631, 508 N.W.2d 575 (1993). Commonwealth claimed the title insurance policy did not provide coverage for the Woodles' claim. In its answer, Commonwealth asserted that the Woodles failed to state a cause of action because "any and all claims which are the subject of this litigation and were submitted to Commonwealth for coverage were considered and properly denied by Commonwealth under the title insurance policy, [attached as] Exhibit C." Commonwealth raised

this defense in three summary judgment motion hearings argued in the district court. The Woodles made no objection to Commonwealth's reliance on the provisions of the policy as a defense.

[5] In the district court, the Woodles had numerous opportunities to object to Commonwealth's reliance on Exclusion 3(d) and did not do so. Because this objection was not presented to the lower court, we will not address it on appeal. In the absence of plain error, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *In re Estate of Rosso*, 270 Neb. 323, 701 N.W.2d 355 (2005). We find no plain error in the court's consideration of Exclusion 3(d).

### IMPLIED EASEMENTS ATTACH WHEN JUDICIALLY RECOGNIZED BY COURT JUDGMENT

In the appeal from the quiet title action, the Woodles claimed that the district court erred in finding that easements by implication from former use existed over Lot 2 in favor of Lots 1 and 3. That issue was decided adversely to the Woodles' claim of error. See *Woodle v. Curlis*, No. A-10-954, 2012 WL 399854 (Neb. App. Feb. 7, 2012) (selected for posting to court Web site).

Here, the Woodles argue that the district court erred in concluding that the implied easements did not attach to the property until they were judicially recognized. The Woodles claim the easements were created in 1992 and became appurtenant to the land at that time. They assert that because the easements were appurtenant, they attached to the land at that time and would pass with the land on subsequent conveyances, and that because the policy was issued subsequent to the easements, the easements were not excluded under Exclusion 3(d).

Commonwealth argues that the implied easements are interests that do not exist as a result of a grant or conveyance. Instead, it is a court's decree that usually establishes the right. Because it requires a court's decree, an implied easement does not "attach" to the land until it is judicially decreed.

[6,7] An easement is an interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose. *Feloney v. Baye*, 283 Neb. 972, 815 N.W.2d 160 (2012). An easement by implication from former use arises only where (1) the use giving rise to the easement was in existence at the time of the conveyance subdividing the property, (2) the use has been so long continued and so obvious as to show that it was meant to be permanent, and (3) the easement is necessary for the proper and reasonable enjoyment of the dominant tract. *O'Connor v. Kaufman*, 260 Neb. 219, 616 N.W.2d 301 (2000).

In *Woodle v. Curlis, supra*, the Court of Appeals found that Lots 1, 2, and 3 were commonly owned by William Thomas Custom Cabinets, Inc., from 1986 until 1992, when Lot 2 was conveyed to Tommy and Phyllis Ogg. This marked the first time that Lots 1, 2, and 3 were not under common ownership. At the time Lot 2 was conveyed, the driveway on Lot 2 was subject to the implied easements and was being used by the Curlises, who had a residence on Lot 1, for the purpose of ingress and egress to Lot 1. The Zajacs' cabinet shop was built in 1984, and the cabinet company used the driveway on Lot 2 to access the cabinet shop on Lot 3 with a truck and trailers. The uses of the easements were in existence at the time of the conveyance subdividing Lots 1, 2, and 3. The use of the driveway on Lot 2 had been so continuous and obvious as to show that it was meant to be permanent. The Court of Appeals concluded the implied easements were created in 1992 when the lots were subdivided, but it did not specifically address the question when the implied easements attached to the land.

In Nebraska, we have not addressed the question when an implied easement attaches to land. The Virginia Supreme Court has addressed a similar issue in *Carstensen v. Chrisland Corp.*, 247 Va. 433, 442 S.E.2d 660 (1994). The issue was when an easement by necessity attached to the land. The title insurance policy was similar to the one in the present case and excluded encumbrances "'attaching or created subsequent'" to the date of the policy. *Id.* at 441, 442 S.E.2d at 665. The insured argued that an easement by necessity arose at the time

the dominant tract was severed from the subservient tract and that because the easement had attached before the policy was issued, the exclusion did not apply.

The Virginia Supreme Court disagreed. It concluded that although "an easement by necessity legally arises at the time the servient estate is severed from the dominant estate, the easement may remain inchoate until established through judicial order or otherwise. An easement often is not judicially established or sought to be established for many years following the initial severance." *Id*. at 442, 442 S.E.2d at 665. The court reasoned that requiring title insurance companies to research title records for all contiguous properties to determine if a latent easement existed would be an unreasonable burden to place on the title insurance company. *Id*. It concluded that the exclusions of the title insurance policy applied and did not cover any losses sustained as a result of the easements by necessity which were established through judicial order entered after the policy date.

Although *Carstensen v. Chrisland Corp., supra*, addressed an easement by necessity, an easement by implication can be analyzed in the same manner. Both easements are interests that come into existence by a court order recognizing their existence rather than by an express grant or easement. We follow the same analysis. In the case at bar, the easements were implied from prior and continuous use but were not of record until a court order legally recognized their existence.

The implied easements were not legally recognized until the court order was entered in the quiet title action. The implied easements over Lot 2 arose from prior use before the policy of insurance was issued, but they remained inchoate until the court order judicially recognized their existence. They were of no force or effect until the court determined that they existed. It was at the time of judicial recognition that the implied easements attached to Lot 2 and became of public record.

We therefore conclude that for purposes of the policy of title insurance in question, the implied easements "attached" to Lot 2 at the time of the district court's decree which recognized their existence. Easements that are created or attach

subsequent to the date of the policy are excluded. Because the implied easements remained inchoate, they did not attach to Lot 2 until they were legally recognized by the decree of the district court which was entered September 7, 2010. The date of the title insurance policy was December 31, 2008. Because the implied easements attached subsequent to issuance of the policy, the easements were excluded by the terms of the policy. As a matter of law, Commonwealth did not have a duty to defend or indemnify the Woodles.

### CONCLUSION

The provisions of the title insurance policy on Lot 2 did not provide coverage for the easements of ingress and egress for the benefit of Lots 1 and 3. Commonwealth did not violate its contract with the Woodles by denying coverage or indemnification. The district court did not err in sustaining Commonwealth's motion for summary judgment. Finding no merit in the Woodles' assignments of error, we affirm the judgment of the district court.

AFFIRMED.

———————————

Matthew Kim, appellee, v. Gen-X Clothing, Inc.,
and Farmer's Truck Insurance Exchange
(Farmers), appellants.

___ N.W.2d ___

Filed April 11, 2014.    No. S-13-802.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, the findings of fact of the trial judge will not be disturbed on appeal unless clearly wrong.

3. **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation